95 N.J. Super. 564 (1967)
232 A.2d 168
MULLER FUEL OIL COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DONALD BRENNER, AND JEROME L. BRENNER, PLAINTIFFS-APPELLANTS,
v.
INSURANCE COMPANY OF NORTH AMERICA, A CORPORATION OF THE STATE OF PENNSYLVANIA AND AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, R.K. HUGHES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 24, 1967.
Decided June 29, 1967.
*569 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Melvin Gittleman argued the cause for appellants (Messrs. Capone & Gittleman, attorneys).
Mr. James L. Melhuish argued the cause for respondent, Insurance Company of North America (Messrs. Schneider & Morgan, attorneys).
Mr. Allan Maitlin argued the cause for respondent R.K. Hughes, Inc. (Messrs. Feuerstein & Sachs, attorneys).
The opinion of the court was delivered by KILKENNY, J.A.D.
Plaintiffs appeal from a final judgment of the Law Division denying all of their claims for relief and dismissing their complaint.
In the first count of their complaint, plaintiffs sought a declaratory judgment that a comprehensive liability policy, with extended coverage as to malicious prosecution and false arrest claims, inter alia, issued by defendant insurance company on December 1, 1962 in favor of Muller Fuel Oil Company as the named insured, covered plaintiffs as to a malicious prosecution and false arrest suit instituted against them by one Thomas Policastro on March 19, 1963 and still pending. Policastro had been acquitted on March 7, 1963 upon trial of an indictment for issuing a worthless check.
Defendant insurance company had denied coverage on the ground that the criminal complaint in the municipal court made by or on behalf of plaintiffs had been filed on November 13, 1961, Policastro had been arrested on the following *570 day and, after a preliminary hearing, had been held for the action of the grand jury and subsequently indicted on May 11, 1962  all of which occurrences antedated the issuance of the policy. But plaintiffs alleged that they had told defendant insurance agent about the Policastro incident prior to obtaining the policy and had been assured that the policy would cover a suit by Policastro so long as he had not yet commenced an action.
In the second count of the complaint, plaintiffs charged in substance that defendants committed legal fraud, in that representations made by defendant insurance agency, R.K. Hughes, Inc., that the December 1, 1962 policy gave them coverage against a potential suit by Policastro, were false and "were known by said defendants to be false at the time of their making and plaintiffs did, in fact, rely upon said representations to their detriment." On this count they demanded a judgment against defendants for all sums they shall become obligated to pay as damages in the Policastro action, for such other and further relief as the court might deem just, and costs.
After both defendants had served and filed their respective answers, which included denials that any misrepresentations had been made, plaintiffs filed separate motions for summary judgment, relying upon affidavits by the individual plaintiffs which had been annexed to the complaint. Although neither defendant filed any answering affidavit, summary judgment was denied.
During the argument of these motions, plaintiffs' attorney stated:
"* * * by virtue of the fact that no opposing affidavits were filed, we do not have a situation which would warrant summary judgment against the defendant Hughes."
Thereupon, the attorney for R.K. Hughes, Inc., informed the court that he understood that the motion against his client had been withdrawn. Plaintiff's attorney responded:
*571 "I submit we have not made out a case against R.K. Hughes."
The trial court then inquired as to whether the motion was "abandoned and withdrawn." To this plaintiffs' attorney replied: "Yes."
Obviously, this concession by plaintiffs, that they had no right to summary judgment against defendant insurance agent, R.K. Hughes, Inc., which had been named only in the second count, wherein legal fraud was charged against the agent, carried with it the consequence that they had no right to summary judgment on this second count against defendant insurance company. The company was being sued on the theory of vicarious liability for the alleged fraud of its agent. Therefore, if the facts did not warrant summary judgment against the agent, those same facts did not warrant summary judgment against the principal.
At first blush one would wonder why plaintiffs so readily admitted that "by virtue of the fact that no opposing affidavits were filed, we do not have a situation which would warrant summary judgment against the defendant Hughes." One would have expected them to argue that the absence of opposing affidavits entitled them to summary judgment. But the admission of no right to summary judgment was no slip of the tongue. They reiterated, as noted above: "I submit we have not made out a case against R.K. Hughes."
Our examination of the supporting affidavits confirms that plaintiffs were not entitled to a summary judgment against defendant Hughes. We must remember that the allegations of fraudulent representations in the complaint had been denied in each answer. In the supporting affidavits of plaintiffs there were allegations that Hughes had represented that the new policy of December 1, 1962 would cover a potential suit by Policastro as to the occurrences which had preceded issuance of the policy, so long as suit had not yet been commenced. But at no place in their affidavits did plaintiffs recite that those representations were "false," or that they were "known" by Hughes to be false when he *572 made them, or that they were "intentionally" made for any deceitful purpose. In fact, in their first count plaintiffs were arguing inconsistently, as they still maintain, that the representations, which they allege Hughes made, were true and the policy provision does give them coverage as to the Policastro claim.
The necessary constituents of an action for legal fraud are: "a false representation, knowledge or belief by the defendant of the falsity, an intention that the plaintiff act thereon, reasonable reliance in acting thereon by plaintiff, and resultant damage." Louis Schlesinger Co. v. Wilson, 22 N.J. 576, 585-586 (1956). See, too, Dover Shopping Center, Inc. v. Cushman's Sons, Inc., 63 N.J. Super. 384, 391 (App. Div. 1960). Scienter is one of the five essential elements of legal fraud. The failure of plaintiffs to allege it, or even to aver the falsity of the representations in their supporting affidavits, was fatal to their motion for summary judgment. Not having alleged these essentials in their affidavits, it was not necessary for defendants to file an answering affidavit to preclude summary judgment on the second count.
In denying summary judgment on the first count the trial court assumed the correctness of the "factual situation" for the purpose of the motion. It then ruled:
"Although the right to institute suit arose during the policy period, the tort was completed before the subject policy was issued."
It held that plaintiffs' contention, that the cause of action for malicious prosecution accrued when Policastro was acquitted in 1963 after issuance of the policy, was "not tenable." The trial court did not rule upon the legal effect of the alleged representations of defendant insurance agent when plaintiffs purchased the policy.
Defendants not having made any cross-motion for summary judgment, an order was entered merely denying plaintiffs' motion. A pretrial conference followed. The pretrial order contained allegations by plaintiffs that they had purchased *573 the policy as a result of the representations by defendant Hughes that they would have coverage, if Policastro sued them subsequent to acquittal. They alleged "misrepresentation," in referring to the nature of the action in the first paragraph of the pretrial order, and as being one of the issues involved in paragraph 7 thereof. But they made no allegation that there was any misrepresentation made with knowledge of its falsity or with any intent to deceive. Defendant insurance company denied coverage and put plaintiffs to their proofs as to the incidents alleged by plaintiffs in their complaint, admitting only that it issued the policy for the period from December 1, 1962 to December 1, 1965. Defendant insurance agency denied that it was guilty of any misrepresentation and contended that "it issued precisely the policy requested by the plaintiff," without specifying what plaintiff had requested, and did so acting as an agent for a disclosed principal, thus making it not individually liable. The pretrial order listed the issues as "Contract, misrepresentation, agency, damages." All other issues were expressly abandoned.
The matter came on for trial on June 10, 1966 before the same judge who had denied plaintiffs' motion for summary judgment. Plaintiffs' attorney represented to the court by way of an opening statement, that the proofs he was prepared to present were no different in substance from those contained in the affidavits submitted in support of the motion for summary judgment. He expressly noted that he was not waiving a jury. Counsel for the insurance company thereupon moved for judgment on both counts of the complaint, based upon the court's prior opinion. The attorney for R.K. Hughes, Inc., joined in the motion, adding that his client was an agent acting for a disclosed principal and was never intended to be personally liable on any insurance contract.
The trial court granted the motions of defendants for dismissal of the complaint based upon the opening of plaintiffs' attorney. From the final judgment entered upon that ruling, plaintiffs prosecute this appeal.

*574 I
Plaintiffs recognize that they abandoned and withdrew their motion for summary judgment as to defendant R.K. Hughes, Inc. Accordingly, they make no argument that denial of their motion as to that defendant was error.
However, plaintiffs urge that the trial court erred in dismissing their second count as to defendant Hughes without a trial. They point out that it charged all of the necessary elements of legal fraud against this defendant. It may be conceded that the second count of the complaint alleged the five essential elements of legal fraud. But when plaintiffs' attorney announced to the court at the inception of the trial that his proofs would be no different in substance from the recitals in the affidavits used in support of the motion for summary judgment, he admitted that his client had no cause of action against defendant insurance agency for legal fraud, the only charge laid in the second count.
As noted above, plaintiffs' attorney admitted on the motion for summary judgment:
"I submit we have not made out a case against R.K. Hughes."
Yet, in his opening statement at trial he conceded plaintiffs could offer no further proofs than what was alleged in the affidavits. Those averments did not spell out a case of legal fraud against defendant insurance agency because of the failure to allege that the agent's representations were false and, more importantly, that they were knowingly false. Plaintiffs made no claim in their opening that they could or would prove the allegations of legal fraud in the complaint. If they had, they would have been entitled to a trial on that issue, subject to a motion for a dismissal if the probata did not establish the allegata. Instead, they advised the court that they could prove no more than what was in the affidavits. Such proofs alone would not have made out a prima facie case of legal fraud against defendant insurance agent. Hence, dismissal as to the agent was proper.

*575 II
Dismissal of the fraud count on plaintiffs' opening was also proper as to defendant insurance company for the same reasons. If the agent was not liable for legal fraud, it follows that the principal could not be held vicariously liable for the action of its nonculpable agent.

III
Plaintiffs argue that the trial court erred in denying their motion for summary judgment against defendant insurance company on the first count. They point to the fact that no affidavits were filed in opposition to their affidavits and, therefore, evidentiary matters set forth in their affidavits should have been taken as true by the trial court. They note that the trial court, in its opinion, assumed the correctness of the "factual situation" as disclosed by their affidavits, but then ruled that as a matter of law liability could not be claimed "for an injury occurring before the actual date of the policy term" because "the event must be uncertain and unknown to both parties to the insurance contract."
Unquestionably, where a party opposing a motion for summary judgment offers no affidavits or other proofs in opposition, the court may accept as true evidentiary matters set forth in the moving party's affidavits. Auto-Rite Supply Co. v. Woodbridge Twp., 25 N.J. 188 (1957); Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954). The issue, then, is whether the trial court ruled properly in denying plaintiffs' motion for a summary judgment as to defendant insurance company as to the first count of the complaint and in dismissing the complaint as to it at the inception of the trial, basing its opinion on the ground that under the law and facts herein the instant policy of December 1, 1962 did not afford coverage to plaintiffs in a malicious prosecution suit instituted thereafter, the genesis of which stemmed from a criminal complaint filed on November 13, 1961.
*576 We first consider the problem unaffected by the assurances of coverage allegedly made by defendant agent. Plaintiffs stress the clause in the policy whereby the insurance company engaged to pay on behalf of the insured "all sums which the insured shall become legally obligated to pay as damages." (Emphasis added) The policy defines the "insured" to include the named insured, Muller Fuel Oil Company, and also "any executive officer, director or stockholder thereof while acting within the scope of his duties as such." The individual plaintiffs, as officers of the co-plaintiff corporation, would fit this definition. Since plaintiffs could not become "legally obligated to pay" as the result of a malicious prosecution suit by Policastro until after he was acquitted on March 7, 1963, they maintain that a cause of action against them did not fully ripen until the last-mentioned date and thus this constituted an "occurrence" which happened "during the policy period," thereby entitling them to coverage.
The insurance company contends, on the other hand, that coverage under the December 1, 1962 policy could not reasonably be expected as to tortious conduct, injury and damage which had antedated issuance of the policy by more than a year, even though a suit for malicious prosecution could not be and was not instituted herein until after issuance of the policy, upon Policastro's being acquitted of the criminal charge in March 1963.
We are referred to no case exactly in point. The tort of malicious prosecution is sui generis. The tortious act is committed ordinarily by the filing of a criminal complaint with malice and without probable cause. "The essence of an action for malicious prosecution is that the proceeding was instituted without probable cause, that the complainant was actuated by a malicious motive in making the charge." Earl v. Winne, 14 N.J. 119, 134 (1953). Often, as here, the accused is arrested, required to post bail to secure his liberty pending trial, and his reputation is adversely affected. Thus, damage flows immediately from the tortious act. But the *577 accused may not sue for any damage sustained unless and until the criminal proceeding has terminated in his favor. Ibid. In addition to the proof of the termination in his favor, "the plaintiff must adduce affirmative proof * * * tending to show the falsity of or want of probable cause for the charge laid against him, or that the defendant did not honestly believe in his guilt." Id., at p. 135. Thus, although a favorable termination of the criminal proceeding is a condition precedent to institution of the action, the "essence" of the tort is the wrongful conduct in making the criminal charge. Since a suit for malicious prosecution must await a favorable termination of the criminal proceeding, the statute of limitations does not begin until such termination. Lowe v. Wartman, 47 N.J.L. 413 (Sup. Ct. 1885); MacLaughlin v. Lehigh Valley R.R. Co., 93 N.J.L. 263 (Sup. Ct. 1919); Kearney v. Mallon Suburban Motors, Inc., 23 N.J. Misc. 83, 41 A.2d 274 (Cir. Ct. 1945), affirmed 135 N.J.L. 457 (E. & A. 1947); Mayflower Industries v. Thor Corp., 15 N.J. Super. 139, 148 (Ch. Div. 1951), affirmed 9 N.J. 605 (1952).
Here we have the allegedly tortious conduct and injury to the accused as a result thereof antedating by more than a year the issuance of a policy in favor of the alleged tortfeasors, although the favorable termination of the criminal proceeding eventuates some three months after delivery of the policy. Thus, the "occurrence" which creates the legal obligation to pay damages precedes the commencement of the policy period, albeit the institution of suit may be delayed, as here, until favorable termination of the criminal proceeding. It would be unreasonable to hold under those circumstances, and without more, that the insurance company intended to insure against a malicious prosecution suit, instituted subsequent to issuance of the policy, when four of the five essential ingredients of such an action preceded purchase of the policy  and those four constituted the "essence" of the tort. To hold that coverage existed in such a case would mean that such a tortfeasor could purchase coverage *578 a day before the injured person was acquitted in the criminal proceeding and thus shift the burden of damages to an unwary insurance company. Insurance against loss from a malicious prosecution claim does not ordinarily apply when all of the tortious conduct and injury to the victim precede issuance of the policy and only the factor of a favorable termination of the criminal proceeding follows issuance.
We are aware of those cases interpreting the words "occurrence during the policy period," where there is a time interval between some negligent act and damage resulting therefrom. They are collected in the annotation in 57 A.L.R.2d 1385. As a general rule the time of the "occurrence" of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time when the complaining party was actually damaged. "The time of the accrual of the insured's liability is the determining factor, not the time of an event which ultimately results in liability." Export S.S. Corp. v. American Ins. Co., 106 F.2d 9 (2 Cir. 1939), affirmed on rehearing 108 F.2d 1013 (1940), certiorari denied, American S.S. Owners Mut. Protection & Indemnity Assn. v. Exchange S.S. Corp. & American Export Lines, 309 U.S. 686, 60 S.Ct. 809, 84 L.Ed. 1029 (1940). See, too, Shaw v. U.S. Fidelity and Guarantee Co., 101 F.2d 92 (3 Cir. 1938); Nielson v. Travelers Indemnity Co., 174 F. Supp. 648 (N.D. Iowa 1959), affirmed 277 F.2d 455 (8 Cir. 1960).
In Remmer v. Glens Falls Indem. Co., 140 Cal. App.2d 84, 295 P.2d 19, 57 A.L.R.2d 1379 (D. Ct. App. 1956), the insureds had their land graded and filled while the policy was in effect and five years later, when the policy was not in effect, a landslide damaged adjoining property. It was held that the policy did not cover the resulting damage, even though the wrongful act might have been committed when there was coverage. Conversely, in Peerless Insurance Company v. Clough, 105 N.H. 76, 193 A.2d 444 (Sup. Ct. 1963), the damage resulted from a fire which occurred during the policy period, but the negligence on the part of the *579 insured, alleged to have been the cause of the fire, predated the policy period. It was held that there was coverage under the policy, the time of the "occurrence" being construed to mean the time of the occurrence resulting in loss or damage.
Those cases are distinguishable by the very nature of the tort involved. The tort of negligence is not committed unless and until some damage is done. Therefore, the important time factor, in determining insurance coverage where the basis of the claim is negligence, is the time when the damage has been suffered. In a claim based on malicious prosecution the damage begins to flow from the very commencement of the tortious conduct  the making of the criminal complaint. Thus, wrong and damage are practically contemporaneous, although the passage of time can magnify the damage. The time interval for seeking a redress of the wrong of malicious prosecution in the form of a suit to recover money damages is due to the need of awaiting a favorable termination of the criminal proceeding. But the tortious act and injury are a fait accompli.
The remaining question is what effect, if any, results from the alleged representations by defendant insurance agent, who had allegedly been told by plaintiffs about the antecedent Policastro incident and that they desired coverage against the potentiality of a malicious prosecution suit not yet commenced. If the prospective insured made full disclosure of the facts and was sold a policy with coverage against malicious prosecution upon the representations of the insurance company's authorized agent that the policy afforded coverage, so long as Policastro had not yet commenced suit, we see no valid reason why the insured was not entitled to coverage as to that potential and uncertain risk. When the policy was issued the risk of loss was uncertain for three reasons, viz., (1) the criminal proceeding might not terminate favorably for Policastro; (2) if there was a favorable termination, he might not sue for a number of reasons, and (3) he might not recover for want of proof of malice *580 or lack of probable cause, in which event the insurance company would incur only the expense of defending the suit.
While ordinarily an insurance company policy would not insure against a malicious prosecution claim where the tortious conduct and the substantial injury predated the policy, it could do so if the parties to the contract understood and interpreted the policy to include coverage as to the not fully ripened antecedent incident. No issue has been raised herein as to whether insurance coverage against malicious prosecution claims contravenes public policy. Cf. Lo Rocco v. N.J. Mfrs. Ind. Ins. Co., 82 N.J. Super. 323, 332 (App. Div. 1964); 7A Appleman, Insurance Law and Practice, § 4492, pp. 10-15.
The record indicates that defendant insurance agency handled all of plaintiffs' insurance needs to the extent of some $20,000 in annual premiums. The premium paid for the instant comprehensive personal liability policy, insuring against a wide variety of risks for a term of three years with coverage of $1,000,000, was $1,823.68. Thus, the insured was a valued and important customer for whom coverage might be furnished, albeit the same desired coverage might be denied to others.
As we said in Volker v. The Conn. Fire Ins. Co., 22 N.J. Super. 314 (1952):
"An insurance company is liable for the acts done or contracts made by one of its agents within the scope of his actual or apparent authority, as a necessary or reasonable implication in order to effectuate other authority expressly conferred. Insurance companies are held impliedly to authorize their agents to do what is usual or necessary in the transaction of the insurance business." (at p. 325)
See, too, 29 Am. Jur., Insurance, sec. 145, p. 545. This is especially true where the agent of the company is "entrusted by it with blank forms and endorsements which it had authorization to fill out in the issuance of policies," thus indicating that it was acting within the scope of its agency. Nazzaro v. Globe and Republic Insurance Co., 127 N.J. Eq. *581 279 (E. & A. 1940). The agent herein had authority to and did countersign the policy.
Nazzaro held that it was reasonable and justifiable for the insured to rely upon the agent's explanations and representations.
"A construction placed on an ambiguous policy by the acts and representations of an authorized agent of the insurance company may be considered as being binding on the company, in the interpretation of the policy, if the construction by the agent is warranted by the language of the policy, but the company cannot be held bound by a statement as to construction which the agent has no apparent authority to make, especially where insured had knowledge of agent's lack of authority." 44 C.J.S. Insurance § 292, p. 1154.
To the same effect, see 13 Appleman, op. cit., sec. 7385; and 29 Am. Jur., Insurance, sec. 248, p. 631. As aptly stated in 44 C.J.S., at p. 1153:
"If there is doubt as to the meaning of the contract it should be construed in the sense in which the insurer believed, at the time of the contract, that insured understood it, or in the sense that insured understood it and insurer intended he should understand it, or as insured reasonably understood it."
The trial court dismissed the complaint on the sole ground that the policy did not afford coverage because the allegedly tortious conduct of plaintiffs antedated the issuance of the policy. No disposition was made of plaintiffs' claims as to the representations made by defendant insurance agent and their reliance thereon in purchasing the policy. The lack of any affidavit contradictory of the alleged representations of the insurance agent was satisfactorily explained as to the agent by its understanding that the motion for summary judgment was being withdrawn and abandoned, as it was. The insurance company's lack of a contradictory affidavit by the agent was explained as being due to its anticipation that such an affidavit, involving matters within the personal knowledge of that separate party, would be forthcoming from the agent. While the lack is for that reason understandable, *582 it leaves the record with a void as to a very crucial fact.
In the exercise of our original jurisdiction, in an effort to dispose of all issues, we requested an affidavit from defendant agency's representative personally familiar with the facts as to what representations, if any, were made at or before the purchase of the policy in issue, and particularly whether the agent told plaintiffs that the policy would cover a claim for damages by Policastro as to the antecedent incident, so long as suit had not yet been commenced at the time of issuance of the policy.
The agent has supplied an affidavit made by Robert L. Hughes, one of its officers, who alleges that he is personally familiar with the matters in issue. He alleges that he met with plaintiff Donald Brenner in October of 1962 to gather information for a renewal of defendant insurance company's policy which was due to expire on December 1, 1962. He says that he specifically pointed out that the existing policy did not cover malicious prosecution, false arrest, defamation of character and similar occurrences not of a bodily nature, and that Donald Brenner advised that he did not want any additional coverage for false arrest or malicious prosecution, as he was certain that the company would never press charges against anyone unless they had an "open and shut" case.
Hughes further notes in his affidavit that prior to December 1, 1962 he requested the renewal policy but before receiving it plaintiff Jerome Brenner advised that personal injury coverage was desired. The affidavit then states:
"I specifically pointed out at that time that there would be no coverage for the Thomas Policastro incident and another existing criminal action. I did not tell Mr. Brenner that the additional insurance would cover Muller Fuel Oil Company for malicious prosecution and/or false arrest actions so long as Mr. Policastro had not commenced his suit prior to the effective date of the coverage. I specifically told Mr. Brenner that the insurance would not cover him for anything he had already done to Mr. Policastro, but that it would cover him for anything that he or the company might do to Policastro subsequent to the effective date of the coverage." *583 Obviously, this statement under oath is in direct contradiction of allegations made by the individual plaintiffs in their affidavits.
We deem it expedient in the interest of justice that this factual issue of whether Hughes did or did not make the representations as to coverage of the antecedent Policastro incident be determined at a trial and that there be a specific fact finding with reference thereto. If Hughes did so represent to plaintiffs, judgment may be entered against defendant insurance company that coverage exists under the policy as to the Policastro claim. If Hughes did not so represent, as he avers in his affidavit, there will be a judgment in favor of defendant insurance company.
The judgment in favor of R.K. Hughes, Inc., is affirmed. The judgment in favor of Insurance Company of North America is reversed and as to it the matter is remanded for trial of the factual issue noted above, costs to abide the result.