**S. FREEDMAN & SONS, INC.,**
**Appellant,**

v.

**HARTFORD FIRE INSURANCE**
**COMPANY, Appellee.**

**No. 13138.**

District of Columbia Court of Appeals.

Argued Sept. 13, 1978.
Decided Dec. 13, 1978.

David S. Greene, Washington, D. C., for appellant.

Patrick J. Attridge, Washington, D. C., for appellee.

Before KELLY, KERN and FERREN, Associate Judges.

KELLY, Associate Judge:

This appeal stems from a grant of summary judgment to appellee Hartford Fire Insurance Company in appellant S. Freedman & Sons, Inc.'s action for breach of an insurance contract. Specifically, the trial court, relying on *Muller Fuel Oil Co. v. Insurance Co. of North America*, 95 N.J.Super. 564, 232 A.2d 168 (1967), found that personal injury insurance coverage which became effective May 23, 1972, created no obligation on Hartford's part to defend Freedman against a suit for malicious prosecution and false arrest which alleged an arrest eleven days before the effective date, and resulted in an acquittal three months afterward. We affirm.

Freedman argues that because favorable termination of the criminal proceedings is a necessary allegation in a suit for false arrest or malicious prosecution, its potential liability in the civil suit arose only after its personal liability insurance policy had be-

come effective. It argues, also, that regardless of any ultimate obligation to indemnify, Hartford was required to defend against any such suits filed against Freedman during the policy period.

The present case grew out of the following set of undisputed facts. In 1971, Freedman hired Pinkerton's Inc. to investigate the continuing theft of its goods. Pinkerton's report led to the suspension, on August 11, 1971, of a number of Freedman's employees. On May 12, 1972, most of these employees were arrested by Prince George's County Police, apparently on the basis of information furnished by Pinkerton's. One of the arrested employees, Jerry Bunyon, secured a "not guilty" verdict in his larceny case on August 21, 1972. Thereafter, on February 2, 1973, Bunyon sued in the United States District Court for the District of Columbia, charging Freedman with false arrest and malicious prosecution.

Freedman, through Hartford's agent, Walter Ogus, Inc., asked for legal defense since on May 23, 1972, at the initiative of Ogus, Freedman's general liability insurance policy had been expanded to include a Personal Injury Endorsement specifically covering false arrest or malicious prosecution. Hartford refused to defend against Bunyon's suit, however, at first because it misread the deletion of an exclusion covering former employees, and subsequently on the grounds that the alleged tortious conduct had occurred before the policy expansion went into effect.

As a result of the denial, Freedman secured independent counsel to defend it in the Bunyon case and filed a third-party complaint against Ogus and Hartford for legal fees and costs. Freedman's motion for a directed verdict in the Bunyon case was granted on November 11, 1975. The United States District Court then dismissed, without prejudice the third-party complaint so that it could be filed in the Superior Court of the District of Columbia. After twice hearing argument on cross-motions for summary judgment, that court, on December 30, 1977, granted Hartford's motion and denied the motions of Freedman and

Ogus. Freedman and Ogus have settled voluntarily, but Freedman appeals to this court the summary judgment for Hartford.

I

We can begin by dismissing appellant's second argument on appeal. The assertion that an insurer's duty to defend may exist independently of its duty to indemnify is true, but misleading in this context. The Supreme Court of Maine stated the distinction to be that "[W]hereas the duty to defend depends only upon the facts as alleged to be, the duty to indemnify, i. e., ultimate liability, depends rather upon the true facts." *American Policyholders' Insurance Co. v. Cumberland Cold Storage Co.*, 373 A.2d 247, 250 (Me.1977).

This court adopted that rule more than a quarter of a century ago. The opinion of Judge and later Chief Judge Hood sheds light on its application to Freedman's case.

> The obligation of the insurance company to defend an action against insured, as distinguished from its obligation to pay a judgment in that action, by the overwhelming weight of authority is to be determined by the allegations of the complaint. . . . If the allegations of the complaint state a cause of action within the coverage of the policy the insurance company must defend. On the other hand, if the complaint alleges a liability not within the coverage of the policy, the insurance company is not required to defend. In case of doubt such doubt ought to be resolved in the insured's favor. [*Boyle v. National Casualty Co.*, D.C.Mun. App., 84 A.2d 614, 615–16 (1951) (footnotes omitted).]

The distinction between alleged and proven facts requires that the duty to defend be larger than the duty to indemnify, but there is nothing here that requires that the duty to defend be larger than the scope of the policy. Hartford's obligations should be measured by comparing the policy it issued with the complaint filed by Jerry

Bunyon.[1] In the text of that policy, Hartford promised to defend neither "all suits" nor all "groundless, false, or fraudulent" suits, but only suits arising on account of personal injuries listed in the policy.

■ Freedman is right in arguing that the truth of Bunyon's allegations is irrelevant to the duty to defend, but is wrong in arguing that the allegations themselves are irrelevant. In fact, they are the crux of this decision and they return us to the first issue Freedman raised in this appeal; *viz*, did the offense alleged by Bunyon fall within the Personal Injury Endorsement?

## II

The text of the insurance contract promises payment and defense "if the offense is committed in the conduct of [Freedman's] business during the policy period . . . ." Bunyon's complaint alleged the arrest on May 12, 1972, and an acquittal on August 21. The personal injury endorsement was added to the policy on May 23, between those dates.

This court has held that favorable termination is necessary to maintain a cause of action for false arrest or malicious prosecution. *Weisman v. Middleton*, D.C.App., 390 A.2d 996 (1978); *Bumphus v. Smith*, D.C. App., 189 A.2d 130 (1963). However, the question of when, for insurance purposes, the alleged offenses of false arrest and malicious prosecution should be deemed to have occurred has not previously been decided in the District of Columbia.

■ Courts in other jurisdictions have given conflicting answers to the question. *Compare Roess v. St. Paul Fire & Marine Insurance Co.*, 383 F.Supp. 1231 (M.D.Fla. 1974) (late termination brought action for malicious prosecution within the policy period), *with Muller Fuel Oil Co. v. Insurance Co. of North America, supra* ("essence" of tort preceded coverage). On the analogous question of when these events occur for the

purposes of the statute of limitations, there is contradictory authority even within the District of Columbia. *Compare Brewster v. Woodward & Lothrop*, 174 U.S.App.D.C. 164, 530 F.2d 1016 (1976) (statute runs from date of incident) *with Carter v. S. N. McBride Co., Inc.*, 105 Wash.D.L.Rep. 1365 (Aug. 1, 1977) (statute runs from date of favorable termination). The analogy to the statute of limitations provides little assistance, however, since that rule is based on policies of protecting notice and securing ultimate peace between adversaries without unjustly barring claims. This is the basis for the general rule that the statute of limitations begins to run only "from the time the right to maintain the action accrues." D.C.Code 1973, § 12–301, *i. e.*, from the time that *all* the elements of a cause of action exist.

■ These policies need not determine the crucial date for third-party insurance liability. On that issue, our underlying policy must be to give effect to the intent of the parties as evidenced by the contract to which they have agreed. Appleman on Insurance §§ 7381, 7384; Couch on Insurance 2d § 15:1; 44 C.J.S. *Insurance* §§ 289, 291. When the contract speaks of "the following offenses . . . false arrest . . . or malicious prosecution," it will be presumed that, absent language to the contrary, the parties intended those words to be construed in accordance with established rules of law. Couch, *supra* § 15:20.

■ In regard to the allegation of false arrest, this jurisdiction's reading of the phrase seems clear. The injury occurs at the moment when the injured party can no longer move freely; in Jerry Bunyon's case, at the moment of the arrest. *Marshall v. District of Columbia*, D.C.App., 391 A.2d 1374 (1978). Proof of favorable termination is merely a plaintiff's response to a claim of privilege based on probable cause.

---

1. The policy provides:
   . . . if such offense is committed in the conduct of the named insured's business during the policy period . . . the company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false, or fraudulent . . . ..

The gist of any complaint for false arrest or false imprisonment is an unlawful detention and that being shown the burden is imposed upon the defendant to establish that there was probable cause for the arrest . . . ..

\* \* \* \* \* \*

[T]he absence of probable cause for her arrest was not an essential element of appellant's proof, but was rather simply a matter of defense to the allegations of the complaint. . . . [*Clarke v. District of Columbia*, D.C.App., 311 A.2d 508, 511 (1973).]

Accordingly, we hold that Hartford was under no duty to defend Freedman against an allegation of false imprisonment when the alleged date of detention was prior to the effective policy period.

The claim of a duty to defend against an allegation of malicious prosecution presents more difficulty. On this issue there is clear case law in this jurisdiction holding that favorable termination is an essential element of a cause of action for malicious prosecution, *Weisman v. Middleton, supra; Bumphus v. Smith, supra; Horne v. Ostmann*, D.C.Mun.App., 35 A.2d 174 (1944). Yet this does not decide the issue, for the policy at issue here speaks, not of the date when an action could be brought, but of the time that the offense occurred.

■ Appellant relies upon the conclusion of the Florida District Court, that a third-party's favorable termination in the Florida Supreme Court was the "operative occurrence triggering Roess' liability", *Roess v. St. Paul Fire & Marine Insurance Co., supra* at 1233, and that since that court decision followed the effective date of insurance coverage, an obligation to defend existed there. The contract at issue here, however, does not speak to the date that liability arises. It promises coverage "if such offense is committed . . . during the policy period . . . .." To the extent that *Roess* did not consider when the offense occurred, it is irrelevant here. To the extent that it equated the triggering of liability with the time of the offense, there seems to be an error in its logic. As the present case reveals, the third party (here Bunyon) can secure a favorable termination and yet fail to prove that the insured is liable.[2] Clearly, a third-party's failure to secure a favorable termination before bringing suit for malicious prosecution would not void the obligation of an insurance company to defend against such a suit, if the act alleged did fall within the policy period. Thus, the date of favorable termination cannot be regarded as equivalent to the date that the offense is committed.

We must read the policy's terms for the meaning they would carry in ordinary language. On the face of it, the simplest reading of when the act of malicious prosecution is committed is when the legal machinery of the state is set in motion. "The gist of the action is that the plaintiff has been improperly made the subject of legal process resulting in damage . . . .." 54 C.J.S. *Malicious Prosecution* § 4, at 956; *Earl v. Winne*, 14 N.J. 119, 101 A.2d 535, 543 (1953). *See also* 52 Am.Jur.2d *Malicious Prosecution* § 7. This view is certainly compatible with the cases decided in the District of Columbia and their emphasis on the initiation of state action as the crucial point. *Paton v. Rose*, D.C.App., 205 A.2d 609 (1964); *Melvin v. Pence*, 76 U.S.App. D.C. 154, 130 F.2d 423 (1942). As the court in *Roess* acknowledged, this interpretation is particularly appropriate when, as here, the original action is of a criminal nature and when, once the complaint has been filed, "[t]he state thereafter controls the prosecution." *Roess v. St. Paul Fire & Marine Insurance Co., supra* at 1234.[3]

---

**2.** This situation did not arise in *Roess*, for there the third-party and the insured settled out of court. *Roess v. St. Paul Fire & Marine Ins. Co., supra* at 1233.

**3.** In the present case, the facts suggest that the complaint against Bunyon was actually filed by Pinkerton's, Inc., probably without Freedman's knowledge. While this does not affect our present decision since it is the alleged facts which control the duty to defend, *Boyle v. National Casualty Co., supra*, they do indicate how an insured may lose control over prosecutions.

■■ In his complaint, Bunyon made no allegations concerning conduct by Freedman after May 12th. Accordingly, it would seem that no actions by Freedman during the policy period were at issue during the District Court trial.[4] Therefore, we hold that the policy at issue here created no obligation on the part of Hartford to defend Freedman against an action for malicious prosecution based on a warrant and an arrest alleged to have been obtained before the effective policy period.

*Affirmed.*

---

4. *Compare Nicholson v. Roop,* 62 N.W.2d 473, 484 (N.D.1954), where failure to discontinue prosecution after the charge appeared unfounded was found not to be a tort because control of the action had passed from the instigator to the state.