[784 NYS2d 787]

Town of Newfane, Respondent, v General Star National Insurance Company et al., Appellants, et al., Defendants.

Fourth Department, November 19, 2004

## APPEARANCES OF COUNSEL

*Underberg & Kessler LLP*, Buffalo (*Colin D. Ramsey* of counsel), for General Star National Insurance Company, appellant.

*Brown & Kelly, LLP*, Buffalo (*Lisa T. Sofferin* of counsel), for Selective Insurance, appellant.

*Jaeckle Fleischmann & Mugel, LLP*, Buffalo (*Howard S. Rosenhoch* of counsel), for respondent.

## OPINION OF THE COURT

KEHOE, J.

In this matter of apparent first impression in this state, we are called upon to determine when, for purposes of invoking insurance coverage in an underlying action, the insured's alleged underlying act of malicious prosecution is deemed to have occurred—on the date on which the criminal prosecution was instituted, or on the date on which it was terminated in favor of the accused. We conclude that the tort was committed when the criminal prosecution was instituted. We thus conclude that there is no coverage for a claim of malicious prosecution under an insurance policy issued after the prosecution was instituted but in effect when the prosecution was terminated.

### I.

Plaintiff, the Town of Newfane (Town), commenced this action against six insurers, seeking a judgment declaring that each is obligated to defend and indemnify the Town pursuant to a policy of insurance issued to the Town. Before us are appeals, perfected on separate records, by two insurers, defendant General Star National Insurance Company (General Star) and defendant Selective Insurance (Selective). Because both appeals are taken from a single order, we treat them together, although only the appeal of Selective involves the issue previously identified herein.

### II.

Addressing first the appeal of General Star, we conclude that Supreme Court properly granted that part of the Town's motion

for partial summary judgment declaring that General Star must defend the Town in the underlying action pursuant to the provisions of a public officials and employment practices liability policy issued by General Star to the Town. In comparing the allegations of the underlying complaint with the policy in question (*see Touchette Corp. v Merchants Mut. Ins. Co.*, 76 AD2d 7, 9-10 [1980]), we conclude that the Town met its burden of establishing its entitlement to judgment as a matter of law (*see generally Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). The Town made the requisite showing that at least one cause of action in the underlying complaint falls within the policy's coverage, thus establishing its entitlement to a defense of the entire underlying action (*see Frontier Insulation Contrs. v Merchants Mut. Ins. Co.*, 91 NY2d 169, 175 [1997]). In particular, the Town established that the fourth and fifth causes of action of the underlying complaint, respectively entitled "Retaliation for First Amendment Exercise" and "Respondeat Superior Liability," are covered by section II (d) of the policy, which provides that the Town's employees are covered "for their acts in the cause and scope of their employment." In addition, the Town established that the seventh and ninth causes of action of the underlying complaint, alleging negligence and the violation of civil rights, are covered by policy sections I (1) (a) and VI (5), which provide that the Town is covered for claims against it arising out of the wrongful acts of public officials. Contrary to the contention of General Star, the policy exclusions set forth in section I (2) (e) for "false arrest, false imprisonment . . . [or] malicious prosecution" do not apply to those causes of action.

### III.

Turning to the appeal of Selective, we note that the Town sought partial summary judgment declaring that Selective is obligated to defend and indemnify it in the underlying action pursuant to the provisions of a commercial general liability policy issued by Selective. Selective opposed the motion and cross-moved for summary judgment declaring that it has no duty to defend or indemnify the Town in the underlying action. The court granted that part of the Town's motion seeking partial summary judgment declaring that Selective is obligated to defend the Town in the underlying action, and the court denied Selective's cross motion. We conclude that the court should have denied that part of the Town's motion and granted Selective's cross motion.

## IV.

The "Coverage Effective Date" for the Selective policy was April 26, 2000. By the terms of that policy, the Town has coverage for claims for "damages because of 'personal injury,' " which the policy defines in relevant part as "injury, other than 'bodily injury,' arising out of one or more of the following offenses: a. [f]alse arrest, detention or imprisonment; [or] b. [m]alicious prosecution." To be covered under the policy, the personal injury must have been "caused by an offense arising out of [the Town's] business," but "only if the offense was committed . . . during the policy period."*

The underlying action was brought against the Town by Thomas Callahan in February 2002. The underlying complaint alleges the Town's liability for malicious prosecution, false arrest, and false imprisonment, among other torts that are undisputedly outside the coverage of the Selective policy and hence not relevant to Selective's appeal. The underlying complaint alleges that Callahan was "charged, arrested, and jailed under a warrant" on June 7, 1989 based on his alleged violation of Town Law § 268 and the Town's zoning ordinance; that the accusatory instrument against Callahan was subsequently amended on January 30, 1990; that Callahan was again jailed for several hours on April 9, 1990; that on June 6, 1990 he was convicted of 36 counts of violating Town Law § 268 and the Town's zoning ordinance; that he was sentenced and remanded to jail on July 23, 1990; that he was discharged from custody and released on his own recognizance later that day; that the judgment of conviction was reversed on appeal on July 2, 1991, at which time all but one count was dismissed; and that the criminal prosecution of Callahan on that remaining count lay dormant until November 28, 2000, when his motion to dismiss "for lack of a speedy trial and timely prosecution" was granted, resulting in the formal dismissal of that remaining count the next day.

---

* By the terms of the policy, the Town further has coverage for claims for "damages because of 'bodily injury,' " which the policy defines as "bodily injury, sickness, or disease sustained by a person." However, in order for such claim to be covered, the bodily injury must have been "caused by an 'occurrence' "—defined as an "accident, including the continuous or repeated exposure to substantially the same general harmful conditions"—and must have occurred "during the policy period." The Town inappropriately contends for the first time on appeal that it has coverage under that provision of the policy for the underlying cause of action for negligence, and that contention therefore is not properly before us (see Killeen v Crosson, 284 AD2d 926, 927 [2001]; Sovik v Healing Network, 244 AD2d 985, 988 [1997]).

## V.

As is the case with respect to the appeal of General Star, the issue on Selective's appeal is whether the underlying complaint "contains any facts or allegations which bring the claim even potentially within the protection purchased" (*Technicon Elecs. Corp. v American Home Assur. Co.*, 74 NY2d 66, 73 [1989], *rearg dismissed* 74 NY2d 843 [1989], *rearg denied* 74 NY2d 893 [1989], citing *Ruder & Finn v Seaboard Sur. Co.*, 52 NY2d 663, 669-670 [1981], *rearg denied* 54 NY2d 753 [1981]; *see Frontier Insulation Contrs.*,91 NY2d at 175). If it does, then the insurer is under a duty to defend, which we note is broader than the insurer's duty to indemnify (*see Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 310 [1984]; *Ruder & Finn*, 52 NY2d at 669). Conversely stated, an insurer may escape the duty to defend under the policy "only if it c[an] be concluded as a matter of law that there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy" (*Spoor-Lasher Co. v Aetna Cas. & Sur. Co.*, 39 NY2d 875, 876 [1976]; *see Servidone Constr. Corp. v Security Ins. Co. of Hartford*, 64 NY2d 419, 424 [1985]).

We note that the Town does not respond to Selective's contention on appeal that there is no coverage under the policy for the underlying causes of action for false arrest and false imprisonment, and in any event we agree with Selective that those "offenses" were "committed" outside the effective date of the coverage in question (*see generally National Cas. Ins. Co. v City of Mount Vernon*,128 AD2d 332, 335-338 [1987]). The sole remaining issue before us on Selective's appeal is whether there is coverage for the underlying cause of action for malicious prosecution where the criminal prosecution was initiated before the effective date of the policy but terminated in favor of the accused during the policy period. We conclude as a matter of law that there is no coverage for an underlying malicious prosecution cause of action under such circumstances. We reach that conclusion based on the language of the policy, mindful that our task in any case involving issues of contractual interpretation is to ascertain the intent and uphold the reasonable expectations of the parties as expressed in the unequivocal language employed by them (*see Breed v Insurance Co. of N. Am.*, 46 NY2d 351, 355 [1978], *rearg denied* 46 NY2d 940 [1979]; *Throgs Neck Bagels v GA Ins. Co. of N.Y.*, 241 AD2d 66, 69 [1998]; *see also Album Realty Corp. v American Home Assur. Co.*, 80 NY2d

1008, 1010 [1992], *rearg denied* 81 NY2d 784 [1993]; *Bird v St. Paul Fire & Mar. Ins. Co.*, 224 NY 47, 51 [1918]).

We further note that our determination of the issue accords with the great weight of authority from other jurisdictions (*see City of Erie, Pa. v Guaranty Natl. Ins. Co.*, 109 F3d 156, 160-165 [1997] [applying Pennsylvania law]; *Royal Indem. Co. v Werner*, 979 F2d 1299, 1300 [1992] [applying Missouri law]; *Ethicon, Inc. v Aetna Cas. & Sur. Co.*, 688 F Supp 119, 123-127 [1988] [applying New Jersey law]; *Southern Md. Agric. Assn., Inc. v Bituminous Cas. Corp.*, 539 F Supp 1295, 1302-1303 [1982] [applying Maryland law]; *Consulting Engrs., Inc. v Insurance Co. of N. Am.*, 710 A2d 82, 86-88 [Pa 1998], *affd* 560 Pa 247, 743 A2d 911 [2000]; *American Family Mut. Ins. Co. v McMullin*, 869 SW2d 862, 864-865 [Mo 1994]; *Paterson Tallow Co., Inc. v Royal Globe Ins. Cos.*, 89 NJ 24, 30-37, 444 A2d 579, 582-586 [1982]; *S. Freedman & Sons, Inc. v Hartford Fire Ins. Co.*, 396 A2d 195, 199-200 [DC 1978]; *Zurich Ins. Co. v Peterson*, 188 Cal App 3d 438, 444-448, 232 Cal Rptr 807, 810-813 [1986]; *Harbor Ins. Co. v Central Natl. Ins. Co.*, 165 Cal App 3d 1029, 1034-1043, 211 Cal Rptr 902, 905-911 [1985]; *Muller Fuel Oil Co. v Insurance Co. of N. Am.*, 95 NJ Super 564, 576-579, 232 A2d 168, 174-175 [1967]; *contra Security Mut. Cas. Co. v Harbor Ins. Co.*, 65 Ill App 3d 198, 204-206, 382 NE2d 1, 5-6 [1978], *revd on other grounds* 77 Ill 2d 446, 397 NE2d 839 [1979]; *Roess v St. Paul Fire & Mar. Ins. Co.*, 383 F Supp 1231, 1233-1235 [1974] [applying Florida law]).

In concluding that the date of the commencement of the underlying criminal prosecution is controlling for purposes of insurance coverage, we recognize that a cause of action for malicious prosecution may be premised on the initiation or continuation of a criminal proceeding without probable cause (*see Smith-Hunter v Harvey*, 95 NY2d 191, 195 [2000]; *Broughton v State of New York*, 37 NY2d 451, 457 [1975], *cert denied sub nom. Schanbarger v Kellogg*, 423 US 929 [1975]; *Weaver v Town of Rush*, 1 AD3d 920, 922-923 [2003]). We further recognize that a cause of action for malicious prosecution does not ripen substantively or accrue for purposes of the statute of limitations until the ultimate dismissal or favorable termination of the criminal charges in November 2000 (*see generally Martinez v City of Schenectady*, 97 NY2d 78, 84-85 [2001]; *Cantalino v Danner*, 96 NY2d 391, 395 [2001]; *Roche v Village of Tarrytown*, 309 AD2d 842, 843 [2003]; *Nunez v City of New York*, 307 AD2d 218 [2003]; *Matter of Ragland v New York City Hous. Auth.*, 201

AD2d 7, 9 [1994]). Finally, we recognize that the damages incurred (such as for counsel fees) by reason of the continuation of a criminal prosecution might well be, to a corresponding extent, continuing (*see Callan v State of New York*, 134 AD2d 882, 883 [1987], *revd on other grounds for reasons stated in dissenting mem* 73 NY2d 731 [1988], *mot to amend remittitur granted* 74 NY2d 647 [1989]; *see also Ethicon, Inc.*, 688 F Supp at 125). However, none of those considerations determines the issue at hand, for here the policy speaks not of the date upon which an action could have been brought or the damages fully ascertained, but of when the "offense [was] committed" (*S. Freedman & Sons*, 396 A2d at 199; *see Southern Md. Agric. Assn.*, 539 F Supp at 1303).

We are unable to conclude that the "offense" of malicious prosecution was "committed" at the time of such dismissal of the criminal charges. In referring to the "offense," the policy invokes the concept of legal injury or wrong, as evinced by the policy's references to the "personal injury" being "caused by an offense" and "arising out of" an "offense." In our view, Callahan was not in any sense legally injured by the Town when the criminal prosecution against him was dismissed on his motion, and the Town at that juncture "committed" no "offense" against Callahan. In the language of the policy, the "injury" was not "caused by," nor did it "aris[e] out of," that dismissal. Both causally and temporally, therefore, we cannot attribute whatever "personal injury" was suffered by Callahan to the termination of the criminal charges against him (*see Harbor Ins. Co.*,165 Cal App 3d at 1036, 211 Cal Rptr at 907). Indeed, the dismissal of the criminal charges against Callahan was but the beginning of the judicial system's remediation of whatever alleged "offense" or "personal injury" may have been suffered by him. As a condition precedent to a cause of action for malicious prosecution (*see City of Erie, Pa.*, 109 F3d at 160; *S. Freedman & Sons*, 396 A2d at 199; *Harbor Ins. Co.*, 165 Cal App 3d at 1037, 211 Cal Rptr at 907; *Muller Fuel Oil Co.*, 95 NJ Super at 577, 232 A2d at 174), the termination of the criminal prosecution in a manner favorable to the accused is required by law so that the court may be satisfied that the accused has in fact been wronged or injured.

> "The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused . . . [and thus] establishes the tort, that is, the malicious and unfounded charge

. . . against an innocent person. If the accused were actually convicted, the presumption of his [or her] guilt or of probable cause for the charge would be so strong as to render wholly improper any action against the instigator of the charge" (*Zurich Ins. Co.*, 188 Cal App 3d at 444, 232 Cal Rptr at 810 [internal quotation marks omitted]).

Thus, the requirement or element of favorable termination "serves practical concerns of judicial economy, by forestalling unnecessary and unfounded actions and by facilitating proof of the remaining elements of the tort" (*Harbor Ins. Co.*, 165 Cal App 3d at 1037, 211 Cal Rptr at 907). Indeed, the fact of favorable termination is merely part of the counterargument of the plaintiff in the underlying action to any claim or defense of the defendant therein, or any evidentiary presumption, of privilege based on probable cause (*see S. Freedman & Sons*, 396 A2d at 198; *Harbor Ins. Co.*, 165 Cal App 3d at 1037, 211 Cal Rptr at 907). Moreover, in most criminal matters, the original criminal complainant quickly loses control of the prosecution to the pertinent prosecutorial authorities, meaning that the fact of termination is likewise generally outside the control of the insured. Those facts render it inappropriate in our view to equate the termination of the criminal prosectuion with the tortious injury or "offense" triggering insurance coverage (*see S. Freedman & Sons*, 396 A2d at 199; *see also Southern Md. Agric. Assn.*, 539 F Supp at 1303). On the other hand, to the accused, it makes little difference whether the state or an individual complainant controls the prosecution, because from the accused's standpoint, the injury or offense has been incurred upon the filing of a criminal complaint with malice and without probable cause (*see Zurich Ins. Co.*, 188 Cal App 3d at 448, 232 Cal Rptr at 813). Finally, it bears noting that the failure of the accused to secure a favorable termination of the criminal proceeding before suing for malicious prosecution would by no means negate the obligation of an insurer to defend its insured against such a premature and groundless suit (*see S. Freedman & Sons*, 396 A2d at 199; *see also Southern Md. Agric. Assn.*, 539 F Supp at 1303). It therefore follows that the date of termination of the criminal prosecution cannot itself constitute the date on which the injury or "offense was committed" within the meaning of the policy (*see S. Freedman & Sons*, 396 A2d at 199).

In our view, the "offense" of malicious prosecution was "committed," for purposes of determining the issue of insurance coverage, in 1989, more than a decade before the effective date

of the Selective policy. That "offense was committed" when the prosecution was instituted, allegedly without probable cause (*see Southern Md. Agric. Assn.*, 539 F Supp at 1302; *Consulting Engrs.*, 710 A2d at 85-88; *Paterson Tallow Co.*, 89 NJ at 36-37, 444 A2d at 586; *S. Freedman & Sons*, 396 A2d at 199; *Harbor Ins. Co.*, 165 Cal App 3d at 1035-1037, 211 Cal Rptr at 906-908). Such initiation of the criminal prosecution is the essence or gist of the tort of malicious prosecution (*see S. Freedman & Sons*, 396 A2d at 199; *Muller Fuel Oil Co.*, 95 NJ Super at 577, 232 A2d at 174; *Harbor Ins. Co.*, 165 Cal App 3d at 1036, 211 Cal Rptr at 907). Moreover, the legal injury or "offense" incurred by the plaintiff in the underlying action (albeit not necessarily the damages incurred as a result of that "offense") is the same irrespective of whether the criminal prosecution was known to be baseless when it was initiated or only subsequently demonstrated to be lacking in merit (*see Ethicon, Inc.*, 688 F Supp at 126-127; *see also National Cas. Ins. Co.*, 128 AD2d at 337). Therefore, the injury to the accused was contemporaneous with the initiation of the criminal proceeding against him and hence complete long before the inception of coverage and the incidental termination of the criminal prosecution (*see National Cas. Ins. Co.*, 128 AD2d at 337; *see also Ethicon, Inc.*, 688 F Supp at 125; *American Family Mut. Ins. Co.*, 869 SW2d at 864-865; *Muller Fuel Oil Co.*, 95 NJ Super at 577, 232 A2d at 174-175). We thus conclude that, for purposes of determining insurance coverage, malicious prosecution is not a continuing tort (*see Zurich Ins. Co.*, 188 Cal App 3d at 440, 232 Cal Rptr at 808; *Harbor Ins. Co.*, 165 Cal App 3d at 1037-1038, 211 Cal Rptr at 908). We further conclude that the policy is to be construed as "fixing the point of coverage for malicious prosecution at one readily ascertainable date: the date on which the acts [we]re committed that [might] result in ultimate liability" (*Paterson Tallow Co.*, 89 NJ at 35 n 5, 444 A2d at 585 n 5), or "when the alleged tortfeasor t[ook the] action resulting in the application of the [s]tate's criminal process to the [plaintiff in the underlying action]" (*Southern Md. Agric. Assn.*, 539 F Supp at 1302, citing *S. Freedman & Sons*, 396 A2d 195 [1978]).

In our view, it would make no sense to adopt the position advanced by the Town that the "offense" was not "committed" until termination of the criminal prosecution. To do so would be to interpret the Selective policy as covering the Town for its alleged malicious prosecution of Callahan but not for its alleged false arrest and false imprisonment of him, even though all of

those alleged "offense[s]" were relatively contemporaneously "committed" by the same officials, employees or agents of the Town. Further, to adopt the position advanced by the Town would mean that whichever insurer or insurers provided coverage to the Town in 1989 and 1990 would necessarily have no obligation to defend and indemnify the Town for malicious prosecution, despite being subject to defending and indemnifying the Town for the false arrest and false imprisonment allegedly "committed" by the same town officials, employees or agents at the same general time. Moreover, to hold that Selective is liable to provide a defense to the Town and possibly indemnify it for malicious prosecution would lead to the unreasonable inference that, upon issuing the policy, Selective intended to assume liability for damages arising from tortious acts "committed" at least a decade earlier (*see Consulting Engrs.*, 710 A2d at 88; *Harbor Ins. Co.*, 165 Cal App 3d at 1041, 211 Cal Rptr at 910; *see also Muller Fuel Oil Co.*, 95 NJ Super at 577, 232 A2d at 175). Additionally, such a result would give an unscrupulous tortfeasor license to foist its tort liability onto an unwary insurer (*see City of Erie, Pa.*, 109 F3d at 160-161; *Royal Indem. Co.*, 979 F2d at 1300; *Consulting Engrs.*, 710 A2d at 88; *Muller Fuel Oil Co.*, 95 NJ Super at 577-578, 232 A2d at 175), such as by procuring insurance coverage for malicious prosecution at any time during the pendency of the criminal prosecution, even just prior to an anticipated acquittal or other dismissal (*see Muller Fuel Oil Co.*, 95 NJ Super at 577-578, 232 A2d at 175). Conversely, to afford coverage based upon a supposed delay between the initiation of the allegedly wrongful criminal prosecution and the commission of the "offense" would allow an insurer to terminate coverage before incurring any liability for a claim of personal injury arising from a criminal prosecution initiated during the policy period (*see Consulting Engrs.*, 710 A2d at 87).

## VI.

In view of our determination, we do not reach the remaining issues raised by the parties. Accordingly, we conclude that the judgment should be modified by denying that part of the Town's motion for relief against Selective, granting Selective's cross motion, and declaring that Selective is not obligated to defend or indemnify the Town in the underlying action.

PIGOTT, Jr., P.J., GREEN, HURLBUTT and MARTOCHE, JJ., concur.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously modified on the law by

denying that part of the motion for relief against defendant Selective Insurance, granting the cross motion of defendant Selective Insurance and granting judgment in its favor as follows: It is adjudged and declared that defendant Selective Insurance is not obligated to defend or indemnify plaintiff in the underlying action, and as modified the judgment is affirmed without costs.