NATIONAL CASUALTY INSURANCE COMPANY, Appellant, v CITY OF MOUNT VERNON et al., Respondents, et al., Defendants.

Second Department, May 11, 1987

### APPEARANCES OF COUNSEL

*Speyer, Thurm, Perlberg & Heller (Edward L. Owen, III* and *Milton Thurm* of counsel), for appellant.

### OPINION OF THE COURT

KOOPER, J.

██ ██ The question to be resolved on appeal is whether the plaintiff National Casualty Insurance Company must defend and indemnify its insured under its "Comprehensive Law Enforcement Liability Policy". For the reasons that follow, we conclude that it is so required.

The facts at bar are undisputed. In June 1981, one Earl Whittaker was arrested and subsequently charged with felony murder arising out of a Westchester County robbery during which a man was shot to death. After his arrest, Whittaker was incarcerated in the Westchester County Penitentiary until January 7, 1983, when he was released upon successfully moving to dismiss the charges against him. By amended notice of claim dated January 26, 1983, and a summons and complaint dated February 16, 1984, Whittaker commenced suit, *inter alia,* against the City of Mount Vernon and the Mount Vernon Police Department, to recover damages for, among other things, false arrest and false imprisonment.

In January 1983, the plaintiff National Casualty Insurance Company (hereinafter National) issued its "Comprehensive Law Enforcement Liability Policy" to the defendant Mount Vernon Police Department. The policy afforded specified liability coverage for the period between January 1, 1983 and January 1, 1984. With respect to the scope of coverage the policy states, in pertinent part:

"The Company will pay on behalf of the INSURED all sums which the INSURED shall become legally obligated to pay as damages because of WRONGFUL ACT(S) which result in:

"(A) PERSONAL INJURY

"(B) BODILY INJURY

"(C) PROPERTY DAMAGE

"caused by an OCCURRENCE and arising out of the performance of the INSURED's duties to provide law enforcement and/or other departmentally approved activities as declared in the Application, or arising out of the ownership, maintenance or use of the premises designated in the Declarations (including the ways immediately adjoining such premises on land), and all operations necessary and incidental thereto".

The term "occurrence" is defined in the policy as follows: "OCCURRENCE—means an event, including continuous or repeated exposure to conditions, which results in PERSONAL INJURY, BODILY INJURY or PROPERTY DAMAGE sustained, during the policy period, by any person or organization and arising out of the performance of the INSURED's law enforcement duties". Notably, "personal injury" is defined to include, *inter alia*, "[f]alse arrest, detention or imprisonment or malicious prosecution". Under the policy, moreover, the company assumes the duty to defend any suit against the insured seeking damages for personal injury, bodily injury, or property damage, "even if any of the allegations of the suit are groundless, false, or fraudulent".

Upon receipt of Whittaker's papers, the respondents informed National of the suit and requested that it defend under the policy. National refused, advising that Whittaker's June 1981 arrest occurred prior to the policy's January 1, 1983 effective date and that the claim would thereby be excluded from coverage. In subsequent correspondence, however, National's casualty claims specialist, while adhering to the company's disclaimer as to Whittaker's false arrest claim, did indicate that "it is conceivable that National Casualty may have some exposure for the confinement from the period of January 1, 1983 to January 7, 1983". Further, the claims specialist also stated that "[i]f you feel that it is appropriate, we would of course, consider our pro rata share based on the claim for the wrongful imprisonment".

No agreement could be reached with respect to the Whittaker claim and, in October 1984 National commenced this suit seeking a declaratory judgment with respect to its liabil-

ity under the policy. Thereafter, by notice of motion dated April 1, 1985, the respondents City of Mount Vernon and the Mount Vernon Police Department moved for summary judgment declaring National's obligation to defend under the policy. In addition, the respondents sought the recovery of legal expenses incurred as a result of National's alleged breach of its duty to defend, including the costs of defending the Whittaker suit and, additionally, the costs incurred in defending the instant action. In the order appealed from, Special Term granted the respondents' motion declaring that National was obliged to "defend and/or indemnify" under the policy. The respondents were also granted summary judgment on their counterclaim for legal expenses, although the inquest ordered with respect to the assessment of these fees has been stayed pending appeal.* National now appeals.

■ It is well settled that "[w]here an insurance policy includes the insurer's promise to defend the insured against specified claims as well as to indemnify for actual liability, the insurer's duty to furnish a defense is broader than its obligation to indemnify" *(Seaboard Sur. Co. v Gillette Co.,* 64 NY2d 304, 310; *Ruder & Finn v Seaboard Sur. Co.,* 52 NY2d 663, 669; *Sturges Mfg. Co. v Utica Mut. Ins. Co.,* 37 NY2d 69, 72; *Baron v Home Ins. Co.,* 112 AD2d 391, 392; *New York Cent. Mut. Fire Ins. Co. v Heidelmark,* 108 AD2d 1093-1094; *see also,* 14 Couch, Cyclopedia of Insurance Law § 51:35 [2d ed 1982]). Moreover, "[t]he duty to defend arises whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless these allegations might be" *(Baron v Home Ins. Co., supra,* at 392; *Seaboard Sur. Co. v Gillette Co., supra,* at 310). Further, "[i]t is also well-settled law that if the insurer is to be relieved of a duty to defend, it must demonstrate that

---

* Although no issues are raised on appeal with respect to the awarding of legal expenses, we note that Special Term, upon determining that National breached its duty to defend, was empowered to award the respondents legal expenses arising from their defense of the Whittaker suit and National's declaratory judgment action *(see, e.g., Mighty Midgets v Centennial Ins. Co.,* 47 NY2d 12; *Johnson v General Mut. Ins. Co.,* 24 NY2d 42; *American Consumer Ins. Co. v Goslin,* 97 AD2d 890; *Hurney v Mattson,* 59 AD2d 934-935; *Glens Falls Ins. Co. v United States Fire Ins. Co.,* 41 AD2d 869, *affd* 34 NY2d 778; *see also, International Paper Co. v Continental Cas. Co.,* 35 NY2d 322; *Grimsey v Lawyers Tit. Ins. Co.,* 31 NY2d 953). The respondents are not, however, entitled to recover the expenses incurred in prosecuting their counterclaim for fees *(see, Johnson v General Mut. Ins. Co., supra,* at 50; *Commercial Union Ins. Co. v International Flavors & Fragrances,* 639 F Supp 1401, 1402).

the allegations of the underlying complaint place that pleading solely and entirely within exclusions of the policy and that the allegations are subject to no other interpretation" *(Baron v Home Ins. Co., supra,* at 392). It cannot be said that the relevant provisions of the policy in this case clearly negated National's obligation to defend when measured against the allegations in Whittaker's complaint. Whittaker's complaint alleges that a covered personal injury—false imprisonment—was sustained after the effective date of the policy. These allegations fall within the policy's provisions, which trigger coverage once specified injuries are sustained during the policy period. We note, moreover, that National's own claims specialist conceded the possibility of coverage under the policy. Accordingly, National was obligated under the policy to undertake the respondents' defense.

■ With respect to National's duty to indemnify, the principal coverage issue over which the parties are in dispute centers upon the proper construction to be attached to the term "occurrence". Central to National's theory on appeal is its threshold contention that the operative policy language mandates the selection of a particular date upon which all the injuries allegedly sustained must be construed to have "occurred". In short, National contends that, as defined by the policy, the term "occurrence" must be interpreted to refer to the precipitating event giving rise to the injury sustained. Thus, argues National, since Whittaker's 1981 arrest and initial restraint predated the inception of coverage on January 1, 1983, the claim, as a matter of law, falls outside the scope of the policy's coverage. We disagree.

Contrary to National's contentions, the language of the occurrence clause herein ascribes no temporal relevance to the causative event preceding the covered injury, but rather premises coverage exclusively upon the sustaining of specified injuries during the policy period. Thus, the pertinent policy provision provides coverage for an "occurrence", and, thereafter, states that an occurrence "means an event * * * which results in PERSONAL INJURY * * * *sustained, during the policy period"* (emphasis supplied). Indeed, as one commentator has stated in discussing a similar provision, "[t]he policy will not depend upon the causative event of occurrence but will be based upon injuries or damages which result from such an event and which happened during the policy period. It will not be material whether the causative event happened during or before the policy period" (Obrist, New Comprehensive Liabil-

ity Insurance Policy, General Liability Insurance: 1973 Revisions, at 39; *see also, Appalachian Ins. Co. v Liberty Mut. Ins. Co.,* 676 F2d 56, 61-62; *Bartholomew v Insurance Co.,* 502 F Supp 246, 252, *affd sub nom. Bartholomew v Appalachian Ins. Co.,* 655 F2d 27; *American Motorists Ins. Co. v Squibb & Sons,* 95 Misc 2d 222; *Deodato v Hartford Ins. Co.,* 143 NJ Super 396, 363 A2d 361, *affd* 154 NJ Super 263, 381 A2d 354; *Acorn Ponds v Hartford Ins. Co.,* 105 AD2d 723, 724; Annotation, 37 ALR4th 382). We note, moreover, that there is nothing in the policy which requires, as a prerequisite to ascertaining whether there is coverage, that the injury resulting from a causative event be reduced to a single or fixed occurrence in time. Nor does the policy distinguish, in terms of coverage, between compensable injuries which are continuous in nature and those whose occurrence is discrete and noncontinuous or require that a personal injury take place in its entirety during the policy period. These omissions are particularly significant in that the policy specifically recognizes that an injury can be caused by "continuous or repeated exposure to conditions" *(cf., Keene Corp. v Insurance Co.,* 667 F2d 1034, 1049, *cert denied* 455 US 1007). Accordingly, the operative event triggering exposure, and thus resulting in coverage under the policy, is the sustaining of a specified injury during the policy period.

At bar, there is no dispute that damage resulting from false imprisonment represents a category of covered personal injury as defined in the policy and that such damage was allegedly sustained, at least in part, when the policy was in force. National's reliance upon decisions from other jurisdictions involving the tort of malicious prosecution is misplaced *(see, e.g., Paterson Tallow Co. v Royal Globe Ins. Co.,* 89 NJ 24, 444 A2d 579; *Muller Fuel Oil Co. v Insurance Co.,* 95 NJ Super 564, 232 A2d 168). In these cases, the injury flowing from the malicious commencement of proceedings was complete prior to the inception of coverage and the only arguably significant element of the tort occurring during the policy period was the termination of proceedings in favor of the party suing the insured. Finally, we reject National's alternative contention that liability to Whittaker represented a known risk for which insurance could not be procured. Whittaker's incarceration, without more, could not reasonably serve as the commencement of a risk of liability to be covered under the policy.

In light of the foregoing, we conclude that National is obligated to defend under the policy and to indemnify for the damages sustained by Whittaker as a result of his incarcera-

tion on and after January 1, 1983, until his release, in the event the respondents become legally obligated to pay damages to Whittaker by virtue of his sustaining covered injuries during the policy period. Accordingly, the order appealed from should be modified by adding a provision that the plaintiff's duty to indemnify extends only to damages sustained by Whittaker as a result of his incarceration on January 1, 1983, until January 7, 1983, and should be otherwise affirmed.

LAWRENCE, J. P., SPATT and RUBIN, JJ., concur.

Ordered that the order is modified, on the law, by adding a provision that the appellant's duty to indemnify only extends to damages sustained by Whittaker as a result of his incarceration on or after January 1, 1983 until his release on January 7, 1983; as so modified, the order is affirmed, without costs or disbursements.