[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is a motion for partial summary judgment, filed by The Travelers Indemnity Company ("Travelers"), on Count II of its First Amended Complaint against National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), by which it seeks a declaration that National Union owes Children's Friend and Service, Inc. ("CFS") a duty to defend with respect to "wrongful adoption" claims brought against CFS by plaintiffs in related litigation. See Rowey v. Children's Friend Serv.,
No. 98-0136, 2003 R.I. Super LEXIS 153 (R.I.Super.Ct. Dec. 12, 2003). By its First Amended Complaint, Travelers seeks a declaratory judgment against CFS and two insurance companies that issued policies to CFS — National Union and Frontier Insurance Company ("Frontier"). Specifically, Travelers seeks a determination of the rights and liabilities of the parties pursuant to several liability policies issued by Travelers to CFS and seeks indemnification and contribution from National Union and Frontier. In this motion for partial summary judgment as to Count II of the First Amended Complaint, however, Travelers seeks a declaration only against National Union, establishing that it has a duty to defend CFS in the related litigation under seven insurance policies issued by National Union to CFS and to contribute to the already incurred and future costs of defense. For the reasons set forth in this Decision, this Court grants Travelers its request for partial summary judgment and declaratory relief with respect to six of the seven policies at issue.
 FACTS AND TRAVEL
In 1981, Joseph and Linda Rowey (the "Roweys") sought to adopt a child through CFS. (Roweys' Am. Compl. ¶ 9.) In December of the following year, the Roweys were informed by CFS that a child was available for them to adopt. (Id. ¶ 12.) At that time, the Roweys allege, CFS "made certain representations to [them] concerning the medical and family history of the prospective adoptive child, the natural mother of the child, and the child's general background history, intending that [they] would rely thereon." (Id. ¶ 13.) Indeed, according to their complaint, the Roweys relied on these representations in deciding to adopt the child, Lisa Rowey, in December 1982. (Id. ¶ 3, 18.)
The Roweys claim that in February 1995, "they first learned that material information had been previously withheld from them" by CFS. (Id. ¶ 19.) They claim that CFS negligently (a) "failed to provide accurate and complete information regarding [Lisa Rowey's] general background and history," particularly with respect to her medical, psychological, and family history; (b) "misrepresented and/or omitted material information" of the same ilk; (c) "failed to supply [the Roweys with] medical records regarding [Lisa Rowey's] past diagnosis, treatment, and care;" and (d) "failed to properly inform [the Roweys] of [Lisa Rowey's] probable need for future treatment." (Id. ¶ 16.)
The Roweys allege that as a result of CFS's negligence, they were deprived of the ability to make informed decisions as to "(a) whether they should or should not adopt the child; (b) whether they were capable of properly raising and caring for the child; and (c) how to properly address the child's needs regarding future care, treatment and general upbringing." (Id.
¶ 15.) The Roweys contend that "as a direct and proximate result" of CFS' negligence, the Roweys, their adopted daughter, Lisa Rowey, and her sister, Meghan Rowey, all have suffered great mental anguish, emotional distress, property damage, and bodily injury; that they have been forced to expend large sums of money for medical and psychiatric treatment; that they have lost opportunities for Lisa Rowey's proper medical and psychiatric treatment; that Lisa Rowey was not properly diagnosed or treated for her psychological and developmental problems; and that they lost opportunities for her proper diagnosis, treatment, and care. (Id. ¶ 20.)
The Rowey plaintiffs[1] filed suit on January 12, 1998, alleging (1) negligent misrepresentation, (2) intentional misrepresentation, (3) negligent infliction of emotional distress, (4) intentional infliction of emotional distress, (5) negligence, (6) breach of fiduciary duty, and (7) breach of contract. (See id.) Subsequently, Travelers filed the present action seeking, inter alia, a declaration that National Union has a duty to contribute to Travelers' defense of CFS in Rowey.
In the past, both Travelers and National Union have provided coverage to CFS. Travelers issued five policies to CFS, providing coverage from January 1, 1982 until January 31, 1986 when CFS cancelled its policy. National Union provided coverage for two different periods. It issued a policy to CFS covering the period between January 1, 1985 and January 1, 1986. Subsequently, National Union issued six more policies to CFS that covered the period from January 29, 1986 to January 29, 1992.
Travelers filed its motion for partial summary judgment with supporting memorandum, affidavit, and exhibits, arguing simply that under the Rowey plaintiffs' complaint, National Union owes CFS a duty to defend because the complaint meets the appropriate standard — the "pleadings test" — by alleging that, as a result of CFS's negligence, "bodily injury" and "property damage" were incurred "within the policy periods." (Travelers' Mem. in Supp. of Summ. J. 6.) National Union filed an objection in which it analogizes the present cause of action to a cause of action for "wrongful birth," arguing that the "occurrence and `injury'" resulting from a "wrongful adoption" caused by negligent misrepresentation occur at or before the point of adoption and, thus, fall outside National Union's coverage. (National Union's Objection to Travelers' Mot. for Part. Summ. J. 13.) Travelers filed a response in which it contends that National Union's focus on the timing of the "occurrence and `injury'" goes impermissibly beyond the allegations of the complaint. Travelers further argues that the timing of the "injury" is relevant only to the issue of the duty to indemnify and not to the duty to defend. Finally, Travelers asserts that National Union's analogizing the instant cause of action to a cause of action for wrongful birth is inapt and that in the present case, the injury occurs at the point of discovery.
Both Travelers and National Union have provided supplemental memoranda. In its supplemental memorandum, Travelers principally reiterates its argument that the allegations in the complaint satisfy the requirements of the "pleadings test," adding that the language of the policies requires only that the "injury" be sustained during the policy period. By contrast, National Union argues that the cause of the Rowey's injuries — CFS's negligent misrepresentation — is not an occurrence, and that even if it were, the "occurrence" and resulting injury fall outside National Union's coverage period.
 STANDARD OF REVIEW
The Rhode Island Supreme Court has articulated the standard of review this Court must follow in ruling on motions for summary judgment: "[s]ummary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v. Burrillville Racing Ass'n,603 A.2d 317, 320 (R.I. 1992) (citing Steinberg v. State,427 A.2d 338 (R.I. 1981); Ludwig v. Kowal, 419 A.2d 297 (R.I. 1980)); Super. Ct. R. Civ. P. 56(c). A party may seek resolution by summary judgment of fewer than all claims. Coro, Inc. v. R.N.Koch, Inc., 112 R.I. 371, 380, 310 A.2d 622, 627 (1973); Super. Ct. R. Civ. P. 54(b). When the moving party sustains its burden, "the opposing parties will not be allowed to rely upon mere allegations or denials in their pleadings. Rather, by affidavits or otherwise, they have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact."Bourg v. Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998) (citing St. Paul Fire Marine Ins. Co. v. Russo Bros., Inc.,641 A.2d 1297, 1299 (R.I. 1994)); Super. R. Civ. P. 56(e). During a summary judgment proceeding, "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Palmisciano, 603 A.2d at 320
(citations omitted).
 ANALYSIS Duty to Defend
It is well settled under Rhode Island law that an insurer's duty to defend is a function of the allegations in the complaint filed against the insured. Peerless Ins. Co. v. Viegas,667 A.2d 785, 787 (R.I. 1995). To determine whether the obligation exists, courts employ the "pleadings test," comparing the complaint in the underlying cause of action with the policy issued by the insurer. Only those facts alleged in the complaint against the insured are compared to the provisions of the insured's policy. Flori v. Allstate Ins. Co., 120 R.I. 511,513, 388 A.2d 25, 26 (1978). If the facts asserted in the complaint are sufficient to bring the case "potentially within the risk coverage of the policy," the insurer will be duty-bound to defend regardless of whether the allegations are "groundless, false, or fraudulent." Peerless, 667 A.2d at 787. Whether the plaintiffs in the tort action ultimately prevail is irrelevant.Id. Thus, proper resolution of the instant case requires examination of the relevant coverage provisions in the insurance policies provided to CFS by National Union. Based on the following analysis, this Court finds, as a matter of law, that the facts asserted in the Rowey plaintiffs' complaint are sufficient to bring the case potentially within the risk coverage of six out of seven of National Union's policies.
A. The Coverage Provisions
Each of the seven policies issued by National Union to CFS features one of four substantially similar coverage provisions.[2] The National Union insurance policy covering the period from January 1, 1985 to January 1, 1986, Policy No. S 996-24-75, provides that National Union will cover all:
 damages because of A. bodily injury or B. property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent. (Travelers' ex. F.) The insurance applies only to "bodily injury" and "property damage" as they are defined in the policy. "Bodily injury" is defined therein as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." (Id.) The policy defines "property damage" as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." (Id.)
The two policies that cover the period between January 29, 1986 and January 29, 1988 — both labeled as Policy No. MP 905 04 33 — do not require that the damages arise "out of the ownership, maintenance, or use of the insured premises and all operations necessary or incidental thereto," but are otherwise identical to the original policy. (Travelers' ex. G, H.) The three policies that cover the period between January 29, 1988 and January 29, 1991 — Policy Nos. MLP 5224796, MLP 5239224, and MLP 525477 — are worded the same as each other as follows:
 We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS — COVERAGES A AND B. This insurance applies only to "bodily injury" and "property damage" which occurs during the policy period. The "bodily injury" or "property damage" must be caused by an "occurrence."[3]
(Travelers' ex. I, J.) The final policy, Policy No. MLP 203 4119, provides that National Union will cover "`bodily injury' or `property damage' to which this insurance applies," and that the insurance "applies to `bodily injury' and `property damage' only if: (1) The `bodily injury' or `property damage' is caused by an `occurrence' that takes place in the `coverage territory;' and (2) The `bodily injury' or `property damage' occurs during the policy period." (Travelers' ex. K.)
B. The First National Union Policy (Policy No. S 996-24-75)
In their complaint, the Rowey plaintiffs allege that as a "direct and proximate" result of CFS's negligent misrepresentation to the Roweys, the Rowey plaintiffs "have suffered great mental anguish, emotional distress, property damage, and bodily injury." With respect to the policy covering the period between January 1, 1985 and January 1, 1986, National Union argues that it owes CFS no duty to defend because the alleged "bodily injury" and "property damage" are not alleged to and do not arise "out of the ownership, maintenance, or use of the insured premises and all operations necessary or incidental thereto" as required by the plain language of the policy. This Court agrees with National Union.
As noted, an insurance company is obligated to defend its insured if the facts asserted in the complaint are sufficient to bring the case "potentially within the risk coverage of the policy." Peerless, 667 A.2d at 787. Although this language means that the duty to defend is broader than the duty to indemnify, it is nevertheless true that if the case cannot fall within the risk coverage of the policy, there is no duty to defend. Id. In the case at bar, it cannot be said that injuries alleged to have been the result of professional negligence arose "out of the ownership, maintenance, or use of the insured premises and all operations necessary or incidental thereto."
The question of how to interpret this phrase in the policy — namely, the language, "arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto" — has never been addressed by Rhode Island's courts. In fact, only the Maryland Court of Special Appeals appears to have decided the issue. See Chesapeake PhysiciansProf'l Ass'n v. Home Ins. Co., 608 A.2d 822, 826-27 (Md. Ct. Spec. App. 1992). In Chesapeake, the insured was a non-profit physicians professional association that provided administrative support services to health care provider organizations. Id. at 823. A woman sued the insured for the wrongful death of her husband alleging misrepresentations by the insured with regard to the scope of its coverage for liver transplants. Id. The trial court ruled, as a matter of law, that the insurer had no duty under the policy either to indemnify or defend the insured. Id.
at 824.
The policy in Chesapeake was a business owners policy that included provisions excluding certain types of damages and claims from its broad comprehensive general liability coverage. Id. at 823. Importantly, the pertinent language of the general coverage provision was identical to that of the policy in question here. The insurer argued that by the language of the general coverage provision, the policy was a limited premises liability policy; the insured argued, however, that business operations conducted from the premises were covered under the language of the endorsement. Id. Ultimately, the court ruled in favor of the insurer, concluding as follows:
 [I]n the language of the liability limitation endorsement . . . "operations necessary or incidental thereto" modifies not "premises" but "ownership, maintenance, or use of the premises." Thus, the coverage afforded by the policy extends to claims arising from the "ownership, maintenance or use" of the property, and "operations necessary or incidental" to the "ownership, maintenance or use" of the property.
Id. at 826.
The Maryland court based its conclusion on the linguistic structure of the policy and "other portions of the insurance policy." Id. at 827. First, the court noted that the description of the property and operations covered by the policy was limited to the single word, "Office," and not a "more precise definition of the types of operations covered." Id. Second, the court stressed the fact that premiums were calculated based on the square footage of the properties and premises covered, not on the basis of certain types of risks. Id. Finally, the court observed that, in accordance with industry custom, policies are not individually tailored to each particular customer. Id.
Rather, policies start with the most expansive coverage and are whittled down using exclusionary language that is tailored to the particular customer. Id. The court opined that this final factor was "perhaps most important." Id. Applying these three factors to the facts of the instant case, this Court concludes that Policy No. S 996-24-75 provides premises liability insurance coverage, not general liability insurance coverage.
With respect to the first factor, the policy in question actually provides a somewhat more detailed description of the property and operations covered by the policy than did the policy in Chesapeake. The description includes the term "social services" in addition to two more generic, premises-oriented terms — "Dwelling" and "Office." (Travelers' ex. F.) This marginal improvement as to the first factor, however, is outweighed by the second and third factors. As in Chesapeake,
the premiums are computed on the basis of square footage rather than risk. (Travelers' ex. F.) Most importantly, as inChesapeake, the disputed limitation is included in the general coverage provision, which means that "there was never a time when the analyzed language was not part of the policy." Id. In addition, this Court notes that even the policy's title — "Owners', Landlords' and Tenants' Liability Insurance: Coverage for Designated Premises and Related Operations in Progress Including Structural Alterations, New Construction and Demolition" — suggests that the policy is limited to insurance of the premises and does not contemplate professional negligence.
Based on the foregoing, this Court concludes that Policy No. S 996-24-75 provides premises liability insurance coverage as opposed to general liability insurance coverage. Indeed, Travelers has failed to convince this Court otherwise. As the Rowey plaintiffs' complaint asserts no cause of action for premises liability, within the meaning of the policy as defined by this Court, National Union does not owe CFS a duty to defend under that policy. It necessarily follows, therefore, that Traveler's motion for partial summary judgment is denied to the extent it seeks a contrary declaration under that policy.
Of the seven insurance policies in question, however, only this policy contains the premises limitation. This Court must undertake additional analysis, therefore, to determine whether the possibility of coverage exists under the remaining policies. Such analysis must begin with defining the word "occurrence" as it is used in the policies at issue.
C. The Remaining National Union Insurance Policies
 1. Defining an "Occurrence"
Each of the seven insurance policies issued by National Union to CFS features one of two definitions for "occurrence." The first three policies provide that "`occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage
neither expected nor intended from the standpoint of theinsured." (Travelers' ex. F, G, H.) The remaining four policies are more simply worded, defining "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Travelers' ex. I, J, K.) These same four policies further provide that the insurance does not apply to "bodily injury" or "property damage" that is "expected or intended from the standpoint of the insured." (Id.) Though worded slightly differently, the language of all of the policies is alike inasmuch as an "occurrence" must be an "accident" causing damages neither expected nor intended from the standpoint of the insured.
By itself, the word "accident" is problematic. An "accident" is "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated." Black's Law Dictionary 15 (8th ed. 2004). This definition is not helpful to this Court's analysis because it includes the word "occurrence," making the definition circular with respect to the insurance policies in question. Moreover, according to that dictionary definition, an "accident" is presumptively unintentional, yet the Rhode Island Supreme Court has held, to the contrary, that an "accident" may be an intentional act, provided that the result was unexpected from the point of view of the insured. Liberty Mut. Ins. Co. v.Tavarez, 754 A.2d 778, 781 (R.I. 2000); see also Dias v.Cinquegrana, 727 A.2d 198, 200 (R.I. 1999); Gen. Accident Ins.Co. of Am. v. Oliver, 574 A.2d 1240, 1242 (R.I. 1990) (viewed from the perspective of the injured party, an intentional shooting constitutes "a most unexpected and unfortunate accident"). Nevertheless, for the purpose of determining whether an insurer owes its insured a duty to defend, the Rhode Island Supreme Court has held that when the insurance policy defines an "occurrence" as an "accident," an insurer owes its insured no duty to defend if the complaint alleges intentional acts. Cravenv. Metro. Prop. and Cas. Ins. Co., 693 A.2d 1022, 1022-23 (R.I. 1997).
As listed above, the Rowey plaintiffs assert seven causes of action in their eleven count complaint. Of those seven, intentional misrepresentation and intentional infliction of emotional distress, by definition, allege intentional acts and cannot be the basis of a duty to defend. The remaining five causes of action — negligent misrepresentation, negligent infliction of emotional distress, negligence, breach of fiduciary duty, and breach of contract — are based on the theory that CFS acted negligently in making certain representations to the Roweys. Accordingly, this Court need not address each cause of action separately. Rather, this Court need only determine whether the baseline claim of negligent misrepresentation is an "accident," including "continuous or repeated exposure to conditions," causing damages "neither expected nor intended from the standpoint of the insured:" in other words, whether negligent misrepresentation is an "occurrence."
2. Negligent Misrepresentation is an "Occurrence"
Whether negligent misrepresentation may be considered an "accident" is a question of first impression in Rhode Island. Guided by Rhode Island and extraterritorial case law, this Court answers the question in the affirmative.
In Craven, as noted above, the Rhode Island Supreme Court held that regardless of whether the facts in a complaint are described in terms of negligence, when the insurance policy defines an "occurrence" as an "accident," an insurer owes its insured no duty to defend if the complaint alleges intentional acts. 693 A.2d at 1022-23. There, the Supreme Court found that even though the plaintiff's claim was for negligent infliction of emotional distress, the alleged acts of the defendant, which were the basis of the cause of action, were intentional. The plaintiff's complaint alleged that the defendant was "negligent and careless respecting the emotional distress and mental anguish he was causing" her. Id. at 1022. The defendant's allegedactions, however, were deliberate in nature; he was alleged to have "frequently touched [the defendant] sexually, `committed sexual acts upon her body and had intercourse with her,' all without her consent." Id. at 1022. Thus, the cause of the defendant's actions was not an accident, and the insurer owed no duty to defend. See Sena v. Travelers Ins. Co.,801 F. Supp. 471, 475 (D.N.M. 1992) ("[I]t strains the imagination to speculate how a pattern of sexual overtures and touching can be accidental").
Relying on the Rhode Island Supreme Court's ruling in Sanzi v.Shetty, 864 A.2d 614, 620 (R.I. 2005) (holding that where intentional acts are alleged, there is no "accident," and therefore no "occurrence"), National Union argues that, on the instant facts, Craven is dispositive because negligent misrepresentation involves an intentional act. This argument, however, misconstrues the tort. Negligent misrepresentation indeed involves an intentional act, but that act is speech, not misrepresentation. Speech is intentional in the same way that driving an automobile is intentional. An automobile accident — often the paradigm example of negligence — is certainly unintentional. Extending the analogy, the tort of negligent misrepresentation is better understood as an unintentional misstatement — an "accident."
Not all courts, however, are in agreement on this issue. InSafeco Ins. Co. of Am. v. Andrews, 915 F.2d 500, 502 (9th Cir. 1990), for example, the United States Court of Appeals for the Ninth Circuit, applying California law, held, inter alia, that negligent misrepresentation does not constitute an "occurrence." Applying Safeco, the Court of Appeal of California explained that negligent misrepresentation is a "subspecies or variety of fraud" because intent to induce reliance is an element of the cause of action. Miller v. W. Gen. Agency, Inc.,41 Cal. App. 4th 1144, 1150 (Cal.Ct.App. 1996); see also Dykstra v.Foremost Ins. Co. 14 Cal. App. 4th 361, 366 (Cal.Ct.App. 1993); Chatton v. National Union Fire Ins. Co.,10 Cal. App. 4th 846, 861-62 (Cal.Ct.App. 1992). Thus, since intentional or fraudulent acts are considered purposeful — not accidental — under California law, negligent misrepresentation is excluded from policy coverage. Miller, 41 Cal. App. 4th at 1150 (citingChatton, 10 Cal. App. 4th at 860-61).
As in California, intent to induce reliance is an element of negligent misrepresentation in Rhode Island. See Mallette v.Children's Friend Serv., 661 A.2d 67, 69-70 (citations omitted). California and Rhode Island are not unique in this requirement, however, and other courts sharing this requirement have ruled contrary to the California courts. In Maryland, for instance, the Court of Appeals ruled that even though intent to induce reliance was an element of negligent misrepresentation, "the falsity in the statement and the resulting injury or damage may be accidental." Sheets v. Brethren Mut. Ins. Co.,679 A.2d 540, 551 (Md. 1995). In Sheets, the plaintiffs in the underlying suit — the Christensens — had purchased a home from the defendants — the Sheetses. Shortly after the Christensens moved into the home, the septic system failed and was condemned by the local health department. Id. at 541. The Christensens filed suit against the Sheetses, alleging that the failure of the septic system was the result of "the Sheetses' misrepresentations that it was in `good working condition' because, had it not been for those misrepresentations, the Christensens, whose family was too large for the system to operate properly, would not have moved into the house." Id. Subsequently, the Sheetses' insurer, Brethren Mutual Insurance Company ("Brethren"), argued that it owed no duty to defend the Sheetses because the claims made against them were not covered under their insurance policy. Id.
Specifically, Brethren argued that "(1) `there is no causal nexus or direct causation between the misrepresentation and the property damage;' (2) `the claims for misrepresentation in the complaint are claims only for economic losses — they are not claims for property damage;' and (3) `the Sheetses' misrepresentations to the Christensens are not an occurrence.'" The trial court granted summary judgment in favor of the defendant insurer on the basis that it had no duty to defend or indemnify its insured against a claim of negligent misrepresentation in the sale of property. Id. The Court of Appeals reversed and remanded. Id.
Only Brethren's third argument — that misrepresentations are not an "occurrence" — is before this Court, and, lacking Rhode Island precedent that is squarely on point, this Court finds the Court of Appeals' treatment of that argument persuasive. InSheets, the court opined that, rather than follow those cases characterizing negligent misrepresentation as a form of fraud, it "prefer[red] to follow those cases that treat negligent misrepresentation like other forms of negligence, which are covered as accidents if the insured did not expect or foresee the resulting damage." Id. at 551. Thus, the court ruled in favor of the insured, concluding that whether negligent misrepresentation constitutes an "accident" depends, ultimately, on whether the resulting damage is "an event that takes place without one's foresight or expectation." Sheets,679 A.2d at 551 (quoting Harleysville Mut. Cas. Co. v. Harris Brooks,Inc., 235 A.2d 556, 559) (MD. 1966). The court's conclusion, in that regard, is entirely consistent with existing Rhode Island cases in which the Rhode Island Supreme Court has held, albeit outside the context of a claim of negligent misrepresentation, that an intentional act on the part of the insured may still be an "accident" for purposes of insurance coverage analysis if the result of that act was unexpected from the point of view of the insured. See Liberty Mutual, 754 A.2d at 781; Dias,727 A.2d at 200; Gen. Accident, 574 A.2d at 1240.
This Court agrees with the court's rationale inSheets;[4] negligent misrepresentation is a tort closer to negligence than to fraud, especially within the context of this case. The primary act that makes the actor's conduct actionable is the misrepresentation, not the intent to induce reliance. Negligent misrepresentation, therefore, is notably unlike fraud because the actor does not intend to make a false statement upon which he or she intends another to rely. It follows that the actor does not expect injury to result.
This Court is satisfied that, by stating a cause of action against CFS for negligent misrepresentation, plaintiffs do not suggest that CFS made intentional false statements to the Roweys or that CFS either expected or intended that damage of any sort would result from those representations. As a result, this Court concludes that such claim of negligent misrepresentation falls within the definition of "accident" and is an "occurrence" as defined by the National Union insurance policies.
3. The Timing Issue
Typically, coverage under occurrence-based liability insurance policies, such as those issued by National Union to CFS, depends on whether the "occurrence" falls within the policy period. Seegenerally Textron, Inc. v. Liberty Mut. Ins. Co.,639 A.2d 1358, 1361 n. 1-2 (R.I. 1994) (distinguishing "occurrence-based" insurance policies, which base coverage on the timing of the "occurrence," from "claims-made" insurance policies, which base coverage on the timing of the claim). In determining whether an insurer owes its insured a duty to defend under an occurrence-based liability policy, therefore, a court ordinarily must decide whether there has been an "occurrence" and, if so, when.
Travelers argues, however, that the timing of the "occurrence," for the purpose of determining whether National Union owes CFS a duty to defend, is irrelevant. Travelers asserts that the policies here require only that the "bodily injury" or "property damage" caused by an "occurrence," not the "occurrence" itself, occur during the period of coverage. As the Rowey plaintiffs alleged in their complaint that they sustained "property damage" and "bodily injury" as a proximate result of CFS's negligent misrepresentation, and as it is possible that they sustained such claimed injury during the periods in which National Union's policies covered CFS, Travelers maintains that National Union owes CFS a duty to defend.
In support of its argument, Travelers relies on an opinion from the Supreme Court of New York: National Casualty Ins. Co. v.City of Mount Vernon, 515 N.Y.S.2d 267 (N.Y.App.Div. 1987). In that case, the question before the court was whether the defendant insurance company was obligated to defend and indemnify the City of Mount Vernon in an action for false arrest and false imprisonment even though the arrest and initial restraint predated the inception of coverage.[5] Id. at 268-69. The policy in National Casualty covered personal injury, including "[f]alse arrest, detention or imprisonment or malicious prosecution," as well as bodily injury and property damage "caused by an occurrence." The policy defined "occurrence" as follows: "occurrence — means an event, including continuous or repeated exposure to conditions, which results in personal injury, bodily injury or property damage sustained, during the policy period, by any person or organization and arising out of the performance of the insured's law enforcement duties." Id.
at 268. The court concluded that:
 the language of the occurrence clause herein ascribes no temporal relevance to the causative event preceding the covered injury, but rather premises coverage exclusively upon the sustaining of specified injuries during the policy period. . . . [A]s one commentator has stated in discussing a similar provision, "[the] policy will not depend upon the causative event of occurrence but will be based upon injuries or damages which result from such an event and which happened during the policy period. It will not be material whether the causative event happened during or before the policy period." Willard J. Obrist, The New Comprehensive General Liability Insurance Policy: A Coverage Analysis 6 (1966).[6] See also Appalachian Ins. Co. v. Liberty Mut. Ins. Co., 676 F.2d 56, 61-62 (3d Cir. 1982); Bartholomew v. Appalachian Ins. Co. of N. Am., 502 F. Supp 246, 252 (D.R.I. 1980); Am. Motorists Ins. Co. v. Squibb Sons, 406 N.Y.S.2d 658 (N.Y. Spec. Term 1978); Deodato v. Hartford Ins. Co., 363 A.2d 361 (N.J.Super. 1976); Acorn Ponds Inc. v. Hartford Ins. Co., 105 A.D.2d 723 (N.Y.App. Div. 1984); Richard C. Tinney, Event as Occurring Within Period of Coverage of "Occurrence" and "Discovery" or "Claims Made" Liability Policies,
37 A.L.R.4th 382 (1985). We note, moreover, that there is nothing in the policy which requires, as a prerequisite to ascertaining whether there is coverage, that the injury resulting from a causative event be reduced to a single or fixed occurrence in time. Nor does the policy distinguish, in terms of coverage, between compensable injuries which are continuous in nature and those whose occurrence is discrete and noncontinuous or require that a personal injury take place in its entirety during the policy period. These omissions are particularly significant in that the policy specifically recognizes that an injury can be caused by "continuous or repeated exposure to conditions." Cf. Keene Corp. v. Ins. Co. of N. Am., 667 F.2d 1034, 1049 (D.C. Cir. 1981). Accordingly, the operative event triggering exposure, and thus resulting in coverage under the policy, is the sustaining of a specified injury during the policy period.
Id. at 270. Travelers asks this Court to apply the analysis of the court in National Casualty in the instant case to reach the conclusion that National Union owes CFS a duty to defend.
With respect to the interpretation of the language of the insurance policies at issue, this Court finds National Union
persuasive. Moreover, this Court has neither found nor have the parties made it aware of any authority — domestic or otherwise — requiring this Court to assume that the parties intended that the "occurrence" must take place within the policy period even though the plain language of the policy suggests otherwise. See,e.g., Ins. Co. of N. Am. v. Kayser-Roth Corp., No. PC 92-5248, 1999 R.I. Super. LEXIS 66 (R.I.Super.Ct. July 29, 1999). This Court, therefore, reads the National Union insurance policies according to their plain language.
The insurance policies issued by National Union to CFS are all substantially similar in this regard to the policy in NationalCasualty. All seven policies — including Policy No. S 996-24-75 — provide coverage for "bodily injury," sustained during the policy period, that was originally caused by an "occurrence." The policies specify only that the "bodily injury" — not necessarily the "occurrence" — must occur during the policy period.
With respect to "property damage," every policy through January 29, 1988 — again, including Policy No. S 996-24-75 — draws a distinction, for the purpose of coverage, between "physical injury to or destruction of property . . . including the loss of use thereof at any time resulting therefrom" and "loss of use of tangible property which has not been physically injured or destroyed." (Travelers' ex. F, G, H.) According to the language of the policies, the former is covered as long as it — the physical injury or destruction — occurs during the policy period. (Id.) The latter is covered, however, only if "such loss of use is caused by an occurrence during the policy period." (Id.
(emphasis added).) Under the policies providing coverage through January 29, 1988, therefore, loss of use of tangible property, absent physical injury or destruction of the property, is covered only if the causing "occurrence" occurred during the policy period. The policies covering from January 29, 1988 to January 29, 1992 make no such distinction; the "property damage" need only occur "during the policy period." (Travelers' ex. I, J, K.) Thus, the date of the "occurrence" matters only to the extent that the Rowey plaintiffs suffered "loss of use of tangible property which has not been physically injured or destroyed" prior to January 29, 1988. Since the Rowey plaintiffs claimed both "property damage" and "bodily injury," however, the duty to defend will attach as long as either the claim of "property damage" or "bodily injury" is sufficient to bring the case "potentially with the risk coverage of the policy."
Accordingly, this Court agrees with Travelers' reading of National Union's insurance policies and finds that, for the purpose of determining whether National Union owes a duty to defend, the date of the "occurrence" is immaterial because, even though the timing of the "occurrence" matters with regard to "property damage" under certain circumstances, the policies do not place any temporal restrictions on "bodily injury" other than that they be sustained during the policy period. This Court finds, therefore, that whether National Union owes CFS a duty to defend depends on whether the Rowey plaintiffs' alleged "bodily injury" could have been sustained during the period of time covered by the National Union policies.
National Union contends, however, that regardless of whether the Rowey plaintiffs sustained "bodily injury" or "property damage" during the period of National Union's coverage, these alleged injuries are resulting damages, not the actual injury suffered when parents adopt relying on the negligent misrepresentations of an adoption agency. Analogizing the present cause of action to a cause of action for wrongful birth, National Union contends that the actual injury is "that the parents were denied the opportunity to make a meaningful decision about whether to adopt a child and as a result have taken on an economic (and emotional) obligation to rear a child" whom they might not have adopted had they been fully informed. (National Union's Objection to Travelers' Mot. for Partial Summ. J. 10.) Accordingly, National Union maintains that the Rowey plaintiffs' "injury" could not have been sustained later than the date of adoption, when the Roweys relied on CFS's negligent misrepresentation. National Union asserts, therefore, that it has no obligation to defend CFS. This Court disagrees.
National Union's argument finds its origin in case law regarding the timing of the "occurrence." See Bartholomew,502 F. Supp. at 251 ("The issue that is vigorously disputed is whether the "occurrence" happened at a time when [the defendant insurance companies] were the insurers on the risk");Appalachian Ins. Co. v. Liberty Mut. Ins. Co., 676 F.2d 56 (3d Cir. 1982). As the general rule is that "[t]he time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when the complaining party was actually damaged," the court, in Bartholomew, needed to determine the point at which the complaining party was "actually damaged" as a matter of law, not — as here — whether a particular injury was sustained during the coverage period. Even if this Court were to find that the Rowey plaintiffs were injured and "actually damaged," as a matter of law, at the moment of adoption, the language of the National Union policies does not require that the "occurrence" causing the alleged injuries occur during the policy period. Furthermore, the policy language does not necessarily limit coverage to that injury.[7] Therefore, National Union's reliance onBartholomew is misplaced and its argument fails.
This Court finds that the Rowey plaintiffs' complaint alleges that as a result of CFS's negligent misrepresentation — an "occurrence" — they suffered "bodily injury" which, as plead, may have been sustained during the coverage periods of the six remaining policies by which National Union insured CFS. Ergo, this Court is satisfied that the Rowey plaintiffs' complaint meets the requirements of the "pleadings test," thereby subjecting National Union to a duty to defend.
 CONCLUSION
Adhering to the "pleadings test," this Court concludes that there are no genuine issues of material fact and that, on the strength of those facts, because it is possible that the Rowey plaintiffs' alleged injuries were sustained within the coverage period of the National Union policies covering the period between January 29, 1986 and January 29, 1992, Travelers is entitled to partial summary judgment, as a matter of law, establishing that National Union owes CFS a duty to defend under those policies. Travelers' motion for partial summary judgment is, therefore, granted as to Count II of its First Amended Complaint for declaratory relief against National Union with respect to those policies, but denied with respect to the National Union policy covering the period between January 1, 1985 and January 1, 1986. This Court declares, accordingly, that National Union has a duty to defend CFS in the case of Rowey v. Children's Friend Serv., C.A. No. PC 98-0136, and to contribute to defense costs incurred and to be incurred by Travelers in connection with that case.
Counsel shall confer and submit to this Court forthwith for entry an agreed upon form of order and judgment that is consistent with this Decision.
[1] The Rowey plaintiffs include Joseph and Linda Rowey, who have brought suit on behalf of themselves, individually, and on behalf of their adopted daughter, Lisa Rowey, and their biological daughter, Meghan Rowey.
[2] National Union addresses the Professional Liability provisions of its policies in its Objection to Travelers' Motion for Partial Summary Judgment. However, in its response, Travelers notes that it "never cites to these provisions of the policies . . . and does not rely on them in its motion for summary judgment." (Travelers' Resp. to National Union's Objection to Travelers' Mot. for Summ. J. 11.) Thus, this Court need not address the applicability of these provisions.
[3] National Union admits that it issued Policy No. MLP 5239224 to CFS, covering the period between January 29, 1989 and January 29, 1990. (National Union's Answer ¶ 20.) Although National Union could not locate a copy of that policy, it assumes that since the policies immediately before and after Policy No. MLP 5239224 are identical, it is probable that all three consecutive policies are the same. (National Union's Objection to Traveler's Mot. for Part. Summ. J. 9.) Travelers does not challenge this assumption. For the purposes of this motion, therefore, this Court also will assume that these three policies are the same.
[4] This Court notes that one commentator has criticized theSheets opinion. See Gregory T. Lawrence, Note, Sheets v.Brethren Mutual: Maryland's High Court Misconstrues CGL to CoverExcluded Economic Loss Caused By Negligent Misrepresentation, 27 U. Balt. L. Rev. 189 (1997). Despite criticizing the opinion on other grounds, the commentator agrees with the court's determination that negligent misrepresentations constitute accidents. Id. at 244. The commentator further notes that, as of 1997, only a relatively small number of jurisdictions had directly confronted the issue of whether CGL insurers have a duty to defend against negligent misrepresentation claims. Id. at 220. The courts in seven jurisdictions — Iowa, Louisiana, Maryland, Maine, New Jersey, Ohio, and Texas (federal) — have held that CGLs cover liability for negligent misrepresentations.Id. at 227-28. The majority of jurisdictions that have addressed the issue, however, hold that CGLs do not cover liability for negligent misrepresentations. Id. at 223. Nevertheless, of this twelve jurisdiction majority, only seven have specifically held that negligent misrepresentation is not an "occurrence" or "accident." Id. at 222 n. 224. Five jurisdictions have held that CGLs do not cover liability for negligent misrepresentations because the resulting loss does not constitute "property damage." Id.
[5] The plaintiff in the underlying suit had been arrested in June 1981 and was incarcerated until January 7, 1983. The policy issued to the City of Mount Vernon by National Casualty Insurance Company ("National Casualty") covered the period between January 1, 1983 and January 1, 1984. Thus, the policy was in effect for only the final seven days of the incarceration.
[6] Specifically, Obrist commented that "[i]n some exposure cases involving cumulative injuries, it is possible that more than one policy will afford coverage, each to apply to bodily injury or property damage occurring during its policy period." Obrist, supra, at 6. Thus, the court in National Casualty
compared the injuries sustained as a result of the wrongful arrest to injuries sustained as a result of exposure.
[7] By contrast, the "Miscellaneous Professional Liability Insurance" provisions of the National Union policies cover all "damages because of injury arising out of the rendering or failure to render, during the policy period, professional services arising out of the occupation(s) described in the schedule above." (Travelers' ex. F, G, H, I, J, K.) Under these provisions, coverage is based not on the timing of the injury, but on the timing of the act or omission causing the injury.